Argued and submitted June 13, 2011, affirmed February 6, 2013

Keri DEBERRY,
*Plaintiff-Appellant,*

*v.*

Steven R. SUMMERS;
and Steven R. Summers, P. C.,
an Oregon corporation,
*Defendants-Respondents.*

Marion County Circuit Court
09C10241; A143369

296 P3d 610

Terrence Kay argued the cause and filed the briefs for appellant.

Michael J. Walker argued the cause for respondents. With him on the brief were J. Philip Parks and Parks Bauer Sime Winkler & Fernety, LLP.

Before Schuman, Presiding Judge, and Nakamoto, Judge, and Brewer, Judge pro tempore.*

* Brewer, J. pro tempore, *vice* Wollheim, J.

BREWER, J. pro tempore

Nakamoto, J., dissenting.

## BREWER, J. pro tempore

Plaintiff appeals from a judgment for defendant that the trial court entered after granting defendant's motion for summary judgment on plaintiff's claims of breach of contract and professional negligence. On appeal, plaintiff asserts that there are genuine issues of material fact that preclude summary judgment. We disagree. As explained below, plaintiff failed to adduce evidence to support an inference that defendant made an agreement, express or implied, with his client, plaintiff's grandmother, to ensure that plaintiff would receive a replacement home for one that had previously been placed in trust for plaintiff's benefit. We therefore affirm.

In reviewing the trial court's grant of summary judgment to defendant, we view the record and all reasonable inferences that may be drawn from it in the light most favorable to plaintiff, the nonmoving party, to determine whether there is any genuine issue of material fact and whether defendant was entitled to judgment as a matter of law. No genuine issue of material fact exists if, based on the summary judgment record, no objectively reasonable juror could return a verdict for plaintiff. ORCP 47 C; *Jones v. General Motors Corp.*, 325 Or 404, 414, 939 P2d 608 (1997).

Plaintiff is the granddaughter of Dorothy DeBerry, now deceased. Defendant is an attorney. In 1993, defendant prepared wills and revocable living trusts for Dorothy and her husband, Gerald. Gerald died in 1997. Plaintiff lived in a house (the Canyon Court home) that the trust owned. Some of Dorothy's other relatives also live in houses owned by the trust. In 2000, Dorothy directed defendant to amend the trust agreement. In the amended trust agreement that defendant prepared, Dorothy provided for specific distributions of real property to her son, daughter, nephew, and plaintiff. The amended trust agreement further provided that, upon Dorothy's death, plaintiff would receive the Canyon Court home.[1]

---

[1] The amendment provided:

"I, DOROTHY M. DEBERRY, of Salem, Oregon, declare that this is the First Amendment to the DOROTHY M. DEBERRY Revocable Living Trust Agreement executed on October 18, 1993.

In his deposition, defendant testified that the purpose of the amended trust agreement was "to specifically designate these properties" to go to specific individuals. At his deposition, defendant did not recall any discussion beyond that. In his affidavit in support of his motion for summary judgment, defendant averred that Dorothy never asked him, and he never agreed, to include a provision in either the original trust or will or any amendments thereto to distribute any after-acquired property to plaintiff. Defendant also testified that, "[a]t no time in my representation of [Dorothy] did I agree or contract with [Dorothy] to prepare a trust and/or a will so that [plaintiff] would receive the Trust's interest in any home other than the Trust's interest in the home designated for her in the First Amendment to the Dorothy M. DeBerry Living Trust."

In May 2001, Dorothy signed a second amended trust agreement that defendant prepared, the purpose of which was to revoke a residuary distribution to her nephew. There is no evidence in the record that Dorothy and defendant had any contact after the second amended trust agreement was executed in 2001.

In 2003, at plaintiff's suggestion, Dorothy sold the Canyon Court home and purchased a home on West View Court. Dorothy herself, not the trust, was named as the grantee in the deed to the West View Court home. Dorothy did not thereafter transfer the West View Court home to the trust, nor did she further amend the trust to reflect that the trust no longer owned the Canyon Court home or that Dorothy, individually, owned the West View Court home. In her deposition, plaintiff testified that Dorothy told her that

---

"1. I add the following section as Paragraph C to Specific Distributions from Trust - Death of Dorothy:

"The trustee shall make the following distributions:

"1. To my nephew STEPHEN W. DEBERRY the trust interest in the real property located at 2461 Hackney Ct. SE, Salem, Oregon * * *[.]

"2. To my granddaughter [plaintiff] the trust interest in the real property located at 4782 Canyon Court. NE, Salem, Oregon * * *[.]

"3. To my son KENT DEBERRY the trust interest in the real property located at 785 Moonflower Street NE, Salem, Oregon * * *[.]

"4. To my daughter CHERYL DEBERRY the trust interest in the real property located at 4219 Jade Street NE, Salem, Oregon[.]"

the West View Court home "would be [plaintiff's] home and that it was to be given to [plaintiff] upon [Dorothy's] death." However, plaintiff did not know what, if any, discussions Dorothy had had with her attorney about that subject. Plaintiff also testified that Dorothy had assured her that plaintiff's father would not be able to get the property.

Dorothy died in 2007. Plaintiff learned thereafter that the West View Court home was not owned by the trust. Instead, the West View Court home was an asset of Dorothy's estate that passed under the terms of her will. The West View Court home was the primary asset of Dorothy's probate estate. Plaintiff was one of five residual devisees of Dorothy's estate; so, instead of receiving full ownership of the West View Court home, plaintiff received 20 percent of its value.

Plaintiff brought this action against defendant, alleging claims of breach of contract and professional negligence. Plaintiff asserted in her breach of contract claim that defendant failed to carry out a contractual promise to Dorothy of which plaintiff was a third-party beneficiary. The alleged contractual promise was that defendant would include a provision in Dorothy's revocable trust or will that would achieve Dorothy's objective to distribute to plaintiff the Canyon Court home *or any home purchased by Dorothy to replace the Canyon Court home*. In the negligence claim, plaintiff alleged that defendant was negligent in his representation of Dorothy in failing to carry out the terms of that contract.

Defendant filed a motion for summary judgment, asserting that there was no evidence of any agreement between Dorothy and defendant to include a provision in Dorothy's will or trust to distribute a replacement property to plaintiff. In response, plaintiff filed a declaration pursuant to ORCP 47 E, stating that plaintiff had retained an expert "who is available and willing to testify to admissible facts or opinions creating a question of fact." In addition, excerpts of both parties' deposition transcripts were placed in the summary judgment record.

At the hearing on the motion for summary judgment, the parties debated whether the record disclosed

a genuine issue of material fact as to whether there was an agreement between defendant and Dorothy to benefit plaintiff. Defendant framed the issue as whether there was any evidence that defendant had undertaken to include a provision in the trust that any property purchased by Dorothy to replace the Canyon Court home would be distributed to plaintiff. Plaintiff asserted that there was evidence in the record in support of such a finding, but she also asserted that the issue as pleaded was broader, that is, whether there was evidence that defendant had agreed to confer a benefit on plaintiff and breached that agreement by neglecting to ensure that the trust, in fact, conferred that benefit on plaintiff. Plaintiff asserted that a jury could find from the evidence that it was Dorothy's objective for plaintiff to inherit the home that she was living in at the time of Dorothy's death, whether that home was the Canyon Court home or a replacement home, and that defendant, in fact, had agreed to draft the documents necessary to fulfill that objective, but that he had neglected to do so.

The trial court granted defendant's motion, explaining:

"[Y]ou cannot get to a triable issue of material fact that the agreement existed that's pled in the complaint. You just cannot get there. All the plaintiff can say is, I thought grandma did it, she said she was going to, I don't know if she ever did, I wasn't at any of her meetings with the lawyer, grandma didn't expressly ever say I went to the lawyer and told him and he did X, Y, Z."

In her first assignment of error, plaintiff asserts that the trial court erred in doing so because plaintiff's declaration under ORCP 47 E was sufficient to create a genuine issue of material fact as to whether defendant had agreed with Dorothy that he would draft will and trust documents for plaintiff's benefit. In her second assignment of error, plaintiff contends that the trial court erred because there is other evidence, apart from that declaration, establishing an inference that defendant made such an agreement with Dorothy and that he breached it.

To set the stage for our analysis of plaintiff's assignments of error, we review the case law governing an attorney's

liability to nonclients such as plaintiff in connection with the preparation of wills and trusts. In *Hale v. Groce*, 304 Or 281, 744 P2d 1289 (1987), the defendant attorney agreed with his client that he would prepare a will that included a specific bequest to the plaintiff. *Id.* at 283. After the client died, it was discovered that the bequest was not created in the will or in related trust instruments. The plaintiff sued the attorney for negligence and for breach of contract as a third-party beneficiary. The trial court dismissed the complaint on the ground that it failed to state a claim under ORCP 21 A.

The Supreme Court ultimately held that the complaint stated claims under both contract and tort theories because, as alleged, (1) the plaintiff was an intended beneficiary of the attorney's contract with the decedent; and (2) the attorney had breached a legal duty created by that contract to the plaintiff as its intended beneficiary. *Id.* at 286-87. The court noted that, standing alone, "without a duty to plaintiff derived from defendant's contractual undertaking, plaintiff's tort claim would confront the rule that one ordinarily is not liable for negligently causing a stranger's purely economic loss without injuring his person or property." *Id.* at 283-84. It was the existence of a contract between the decedent and the attorney, and the plaintiff's status as an intended third-party beneficiary of that contract that, in principle, would suffice to establish negligence and breach of contract claims against the attorney. *Id.* at 286.

The court distinguished between a promise to make a particular disposition or to accomplish an intended gift by means specified by the client or by the lawyer's own choosing and a promise to abide by a general standard of skill and care to which the lawyer would be bound independent of the contract. The court held that the former could give rise to a breach of contract by an intended third-party beneficiary. By contrast, the latter, sounding in negligence, arises only from the professional's obligation to the client. In concluding that the complaint had adequately alleged a negligence claim, the court stated that the plaintiff had alleged sufficient facts, if proved, to establish that the "defendant was to use his professional skill to accomplish the donor's objectives and failed to do so." *Id.* at 288.

In addressing the breach of contract claim, the court noted that the complaint alleged breach of a specific promise "that defendant would prepare a trust document wherein [the trustor] and plaintiff would be co-trustees and through which plaintiff would receive the gift [the trustor] had intended her to have." The court said:

> "Whether this agreement in fact was sufficiently specific to go beyond a general promise by defendant to use his professional skills to carry out the assigned project is a matter for proof. Lacking a detailed written contract like that in *Securities-Intermountain* [*v. Sunset Fuel*, 289 Or 243, 252 n 6, 611 P2d 1158 (1980)], it may depend on correspondence, memoranda, or testimony. When an alleged contract does not lend itself to incorporation of a writing in the complaint, the issue at least may have to await affidavits and possible counter affidavits on motion for summary judgment. ORCP 47 D. It should not have been decided on a motion under ORCP 21 to dismiss the complaint."

*Hale*, 304 Or at 289.

Thus, under *Hale*, a nonclient may bring a breach of contract claim against the attorney if the nonclient is a third-party beneficiary of a promise by the lawyer to the client that the lawyer has failed to carry out. The lawyer's promise must be more specific than a general obligation to use his or her best professional efforts with the skill and care customary among lawyers in the relevant community; the lawyer must have agreed to accomplish specific results or objectives for the client. *Id.* at 288-89 ("Whether this agreement in fact was sufficiently specific to go beyond a general promise by defendant to use his professional skills to carry out the assigned project is a matter for proof.").

To assert a negligence claim against the lawyer based on the lawyer's failure to satisfy his or her promise to the client, the nonclient plaintiff also must be a third-party beneficiary of the lawyer's agreement with the client; it is the plaintiff's status as a third-party beneficiary that creates an exception to the rule that one ordinarily is not liable for negligently causing a stranger's purely economic loss without injuring his or her person or property. *Id.* at 284. In *Hale*, the court held that an allegation that the

defendant had agreed but failed to use his professional skill to accomplish the donor's objective was sufficient to state a claim in negligence. *Id.* at 288.

In *Caba v. Barker*, 341 Or 534, 145 P3d 1974 (2006), the Supreme Court considered whether an *implied* promise would support negligence and contract-based claims by a third-party beneficiary of a will or trust. The plaintiffs in *Caba* were residual devisees under a will that the defendant attorney had drafted for the testator.[2] After the testator's death, other parties contested the enforceability of the will. The estate settled the will contest case but, in the bargain, the amount that the plaintiffs would receive under the will was reduced. The plaintiffs brought an action against the defendant alleging claims of negligence and breach of contract. The plaintiffs' complaint alleged that, in agreeing to draft the will, the defendant had *impliedly* promised the testator to "make the will invulnerable to a will contest."

The defendant moved to dismiss the action under ORCP 21 A, asserting that the plaintiffs had not alleged that the defendant had made "a specific contractual promise" to render the will invulnerable to a contest. The trial court agreed with the defendant, concluding that an implied promise to make a will impervious to attack alleges only a professional duty that a lawyer owes to the client. The trial court opined that such a duty does not run to nonclients and that the plaintiffs had failed to state a claim either in contract or negligence. Relying on *Hale,* this court reversed, concluding that the plaintiffs had sufficiently alleged that they were intended third-party beneficiaries of the lawyer's implied promises pertaining to the testator's will and that they had alleged legally sufficient claims for losses suffered as a result of the lawyer's failure to fulfill those implied promises.

On review, the Supreme Court reversed this court's decision. The court first discussed its opinion in *Hale* and its conclusion in that case that the beneficiary of a will is

---

[2] Although the court in *Caba*, 341 Or at 536, used the term "legatees," ORS 111.005(12) provides that the term devisee includes legatees. ORS 111.005 also provides that the definitions contained in ORS chapter 111 apply to the entire probate code unless the context otherwise requires.

a classic "intended" third-party beneficiary who may bring a claim for breach of contract or professional malpractice arising out of an attorney's breach of an agreement to include a provision in the will. *Caba*, 341 Or at 539-40. The court explained that the plaintiffs in *Caba* sought to fall within the rule of *Hale*, contending that, as residual legatees of the testator's will, they were intended third-party beneficiaries, and that the defendant's promise to prepare a will for the testator "included an implied promise to make the will invulnerable to a will contest so as the achieve" the testator's plan to maximize gifts to residuary beneficiaries. The court did not discount the possible existence of a claim based on an implied promise, but it concluded that, to state a claim for either negligence or breach of contract, the plaintiff must allege a factual or legal basis for such an implication. Concluding that there was no factual or legal basis from which a corresponding inference might be drawn in that case, the court upheld the trial court's dismissal of both claims. *Id.* at 541.

Taken together, *Hale* and *Caba* stand for the proposition that an essential element of a breach of contract or negligence claim by a nonclient plaintiff against an attorney who prepared a testamentary instrument is the existence of a promise by the attorney—either express or implied—to include specific provisions to satisfy certain objectives of the client for the benefit of the plaintiff. *See Frakes v. Nay*, 254 Or App 236, 267, 295 P3d 94 (2012) (so describing the holdings in *Hale* and *Caba*). If the agreement is to be implied, then the plaintiff must establish the factual or legal bases for that implication. *Caba*, 341 Or at 540.[3]

In this case, plaintiff's amended complaint alleged that defendant agreed with Dorothy to use his best professional efforts to prepare a will and trust so that plaintiff would receive the Canyon Court home or any replacement home and that defendant breached that agreement in several particulars: (1) by failing to include a provision in the will or trust that any home that Dorothy bought to replace the Canyon Court home also would

---

[3] In her reply brief on appeal, plaintiff attempts to distinguish *Caba* on the ground that the plaintiff in *Caba* "plead[ed] an 'implied' promise, whereas in this matter on appeal, [p]laintiff did not plead an implied promise."

descend to plaintiff; (2) by failing to advise Dorothy that, if she sold the Canyon Court home to buy a replacement home for plaintiff, the trust would need to be amended to include the new home as an asset of the trust; and (3) by failing to stay in contact with Dorothy so as to ensure that the trust remained in conformance with her intentions.

In her first assignment of error, plaintiff asserts that the affidavit that she submitted under ORCP 47 E asserting that an expert was "available and willing to testify to admissible facts or opinions creating a question of fact," precluded summary judgment. Plaintiff reasons that, because there was a dispute concerning the scope of defendant's duty, the expert's testimony would have helped the trier of fact to understand the scope of that duty. Plaintiff also notes that, when a party submits an affidavit under ORCP 47 E, unless the affidavit specifies the issues on which the expert will testify, the court must presume that the expert will testify "on every issue on which summary judgment is sought." *Metropolitan Property & Casualty v. Harper*, 168 Or App 358, 364, 7 P3d 541 (2000). Thus, plaintiff asserts, a court must presume that the expert will provide evidence about the existence and implied terms of an agreement between defendant and Dorothy concerning plaintiff's interest.

Defendant responds that the affidavit did not preclude summary judgment, because more is required to establish plaintiff's claims than merely establishing the legal standard of care: There must be evidence of the terms of the parties' agreement, and plaintiff's expert could not supply such evidence because he had no personal knowledge of them. Defendant also counters that the basis for the trial court's summary judgment ruling, and the striking point here, is whether there is evidence that defendant promised Dorothy that he would include a provision in the trust ensuring that plaintiff would receive the Canyon Court home *or* any replacement home. That, defendant contends, is not an issue subject to expert opinion, but, rather, it is a factual issue for which an affidavit under ORCP 47 E is not necessary or permitted.

ORCP 47 E provides, in part:

"If a party, in opposing a motion for summary judgment, *is required to provide the opinion of an expert to establish a genuine issue of material fact,* an affidavit or a declaration of the party's attorney stating that an unnamed qualified expert has been retained who is available and willing to testify to admissible facts or opinions creating a question of fact, will be deemed sufficient to controvert the allegations of the moving party and an adequate basis for the court to deny the motion. The affidavit or declaration shall be made in good faith based on admissible facts or opinions obtained from a qualified expert who has actually been retained by the attorney who is available and willing to testify and who has actually rendered an opinion or provided facts which, if revealed by affidavit or declaration, would be a sufficient basis for denying the motion for summary judgment."

(Emphasis added.) The filing of an affidavit under ORCP 47 E precludes summary judgment only where expert opinion evidence is *required* to establish a genuine issue of material fact. Expert opinion evidence is necessary and helpful to a jury's understanding of the nature and scope of a lawyer's professional duty of care to a client, *see, e.g., Abraham v. T. Henry Construction, Inc.*, 230 Or App 564, 217 P3d 121 (2009), *aff'd*, 350 Or 29, 249 P3d 534 (2011) (affidavit submitted under ORCP 47 E to create genuine issue of material fact as to whether defendant breached a standard of care in construction). However, the existence of an agreement by defendant to prepare testamentary instruments that would ensure that plaintiff inherited any home in which she might reside at the time of Dorothy's death, including the West View Court home, is a fact question that requires personal, not expert knowledge. *See Gwin v. Lynn*, 344 Or 65, 74, 176 P3d 1219 (2008) (distinguishing between a witness's knowledge as an expert and personal knowledge of facts). Plaintiff does not assert that she has retained an expert witness who has personal knowledge that defendant made such an agreement with Dorothy. In such circumstances, the filing of a declaration under ORCP 47 E did not preclude summary judgment.

In her second assignment of error, plaintiff asserts that there is evidence in the summary judgment record

that presents an issue of fact concerning the existence of a promise by defendant to Dorothy that plaintiff would receive the house she was living in when Dorothy died. Plaintiff notes, initially, that as a beneficiary of Dorothy's trust, there can be no dispute that she was a third-party beneficiary of Dorothy's agreement with defendant. *See Hale*, 304 Or at 286 (beneficiary under a will is a classic third-party beneficiary of the lawyer's promise to the client).

Further, plaintiff contends, there is evidence from which a jury could find that defendant promised to ensure that plaintiff would inherit the Canyon Court home or its replacement. Plaintiff reiterates her reliance on her proffer of expert opinion testimony under ORCP 47 E. As discussed, however, that evidence focused on what plaintiff asserts defendant should have done but failed to do, including, for example, to advise Dorothy about after-acquired property, to recontact her for the purpose of updating the trust, and to do more to discern her intent. The difficulty is that that focus conflates two distinct inquiries; that is, such evidence may support plaintiff's allegations of negligence, but it does not establish the existence of an agreement by defendant to include replacement property in the trust for plaintiff's benefit.

In addition, plaintiff relies on her own testimony and a statement by her aunt, Cheryl, concerning Dorothy's assurances to plaintiff that the West View Court home would belong to plaintiff on her death. Three months after Dorothy died, Cheryl signed a "To Whom It May Concern" letter, stating that Dorothy had intended for plaintiff, Kent, and Cheryl to retain the homes that each was living in and that any such home would be transferred to the resident under Dorothy's amended trust.[4] From that evidence, plaintiff asserts, a jury could infer that Dorothy mistakenly believed—as a result of inadequate advice and follow up from defendant—that her trust adequately ensured that plaintiff

---

[4] Plaintiff also cited defendant's testimony that he has no recollection of discussing with Dorothy the importance of keeping property within the trust or the requirement that any replacement property be held in the name of the trust, and defendant's testimony that, after drafting the trust, he did not conduct any follow up with Dorothy to ensure that the trust would still carry out Dorothy's intentions. Again, that evidence may support the allegations of negligence, but it does not support the allegations of the existence of an agreement.

would inherit the house. Plaintiff further asserts that, based on that evidence, a jury could also infer that defendant was aware of Dorothy's objective and had promised to carry it out.

We conclude that the summary judgment record is insufficient to create a genuine issue of material fact with respect to the existence of an agreement—express or implied—by which defendant undertook to ensure that plaintiff inherited any property apart from the Canyon Court home. Unlike in *Hale* and *Caba*, this case does not concern the adequacy of the plaintiff's pleadings; rather, it concerns the sufficiency of plaintiff's evidentiary showing to defeat summary judgment.[5] *Hale* and *Caba* nevertheless set out the applicable legal standards for establishing claims for breach of contract and professional negligence by a nonclient plaintiff. As discussed, a nonclient plaintiff must establish the existence of an agreement, either express or implied, on the part of the defendant to benefit the plaintiff in the specific way alleged to have been breached. *See Caba*, 341 Or at 540 (residuary beneficiaries of estate did not allege facts or a legal basis as source of alleged implied agreement to make will invulnerable to will contest).

Here, plaintiff's complaint alleged:

"[Defendant] agreed and contracted with [Dorothy], which also created a duty to [plaintiff] as the intended beneficiary, to prepare the Trust and Will so [plaintiff] would receive the [Canyon Court] home and any replacement home [Dorothy] intended [plaintiff] to receive upon her death. [Defendant] also agreed he would use his best professional efforts to prepare [Dorothy's] Trust and Will so [plaintiff] would receive the home or any replacement home. [Defendant] assumed the duty of insuring the documents he prepared would give the home or a replacement home to [plaintiff] to achieve that result upon her death."

To avoid summary judgment on her claims, plaintiff had to adduce evidence of those alleged promises. Of course, Dorothy was unable to testify as to her objectives or agreements with defendant. Moreover, plaintiff has not asserted

---

[5] There is no dispute in this case that the allegations of the complaint are sufficient to state a claim.

that she or anyone else was privy to any communication between Dorothy and defendant. Instead, plaintiff's evidentiary showing consisted of Dorothy's statements to plaintiff that Dorothy would make sure that plaintiff would inherit the Canyon Court home, and her subsequent assurance to plaintiff that the West View Court home belonged to plaintiff. Plaintiff also presented the written statement of her aunt that Dorothy intended that the home that replaced the Canyon Court home would be inherited by plaintiff.[6] Thus, there is evidence of Dorothy's *objective* to have plaintiff inherit the Canyon Court home or any replacement home.

Plaintiff does not assert that she adduced any direct evidence that defendant specifically agreed to prepare a trust provision on behalf of plaintiff beyond the original provision relating to the Canyon Court home or that defendant more generally agreed to ensure the accomplishment of a broader objective. Rather, plaintiff asserts that she adduced evidence from which such an agreement could be inferred. Once again, plaintiff relies on her own deposition testimony that Dorothy assured plaintiff (1) that the West View Court house was plaintiff's home, and (2) that plaintiff's father would not receive that property. Although, as noted, that evidence established a genuine issue of fact with respect to Dorothy's objective when she made those statements, it did not support an inference that defendant had agreed to carry it out.

We have repeatedly stated that reasonable inferences from circumstantial evidence are permissible; however, speculation and guesswork are not. *State v. Bilsborrow*, 230 Or App 413, 418, 215 P3d 914 (2009); *see also State v. Bivins*, 191 Or App 460, 467, 83 P3d 379 (2004) ("The line is drawn by the laws of logic. If there is an experience of logical probability that an ultimate fact will follow a stated narrative or historical fact, then the jury is given the opportunity to draw a conclusion because there is a reasonable probability that the conclusion flows from the

---

[6] As defendant observed before the trial court, there is the additional problem that Cheryl's unsworn letter did not constitute admissible evidence of the assertions that it contained. *McIntire v. First Far West Life Ins. Co.*, 49 Or App 253, 255-56, 619 P2d 1300 (1980); ORCP 47 D (requiring affidavits or declarations that would be admissible in evidence).

proven facts." (Internal quotation marks and citation omitted.)). Although the line between reasonable inference and impermissible speculation is not always easy to draw, in certain respects, the line is a bright one.

In particular, it is well established that "[a] declaration of intention is admissible to show that the declarant did the intended act * * *. A declaration as to what one person intended to do, however, cannot safely be accepted as evidence of what another probably did * * *." *Holmes v. Morgan*, 135 Or App 617, 627, 899 P2d 738, *rev den*, 322 Or 193 (1995) (quoting with approval the dissenting opinion of Justice Traynor in *People v. Alcalde*, 24 Cal 2d 177, 189, 148 P2d 627, 633 (1944)). The statements on which plaintiff relies consist of Dorothy's declarations that plaintiff, and not plaintiff's father, would receive the replacement home. As proffered, those statements could reflect Dorothy's mistaken recollection of a past act (that is, her memory of the terms of her amended trust) or, alternatively, a statement of her future intention to have an attorney prepare the necessary documents to ensure that plaintiff would receive the property. In neither circumstance would Dorothy's declarations permit a trier of fact to engage in any deductive process other than pure speculation to conjure what, if anything, defendant had agreed to do when he prepared Dorothy's amended trust agreement in 2000.

Here, there is lacking an experience of logical probability that, from Dorothy's statements, follows the existence of an agreement by defendant to ensure that plaintiff would inherit any replacement property for the Canyon Court property that Dorothy might acquire after the amended trust agreement was executed in 2000.

The dissent does not disagree with our statement of the applicable law; nor does the dissent contend that there is a jury question as to whether defendant made an *express* promise to include a provision in the trust that would ensure that plaintiff received the Canyon Court home or any replacement home. Rather, the dissent would reverse and remand for trial on the basis of an *implied* promise to include such a provision in the agreement. 255 Or App at 174 (Nakamoto, J., dissenting).

There are two problems with the dissent's reliance on that theory of liability. The first is that plaintiff eschews it. In her briefing in this court, plaintiff disclaims reliance on an implied promise—reason enough not to engage the issue. But even if that problem were surmountable, the second is not: Neither plaintiff nor the dissent has identified some "basis for the implication" that defendant promised to include the particular provision in the agreement. *Caba*, 341 Or at 540.

As the court explained in *Caba*, "[t]wo sources of such an implication are possible: the facts and the law." *Id.* In regard to the latter, "promises implied in law are 'created by the law for reasons of justice.'" *Id.* at 541 (citing Joseph M. Perillo, 1 Corbin on Contracts § 1.20, 64 (revised ed 1993)). And here, as in *Caba*, no one has pointed to any "such 'reasons of justice,' and none occurs to us." 341 Or at 541; *see id.* ("Indeed, it is difficult to image a situation in which the law would, for reasons of justice, imply a promise to obtain the particular result described here [to make a will invulnerable to contest], as contrasted with a promise to exercise a particular level of skill and learning to attempt to achieve such a result.").

Nor does the dissent offer a persuasive exposition of the evidence that would allow a juror to find that defendant made an implied-in-fact promise to ensure that plaintiff would receive the Canyon Court home or a replacement home—that is, evidence that defendant actually made the promise but did so in a way that his intention could be deduced only from the surrounding circumstances rather than explicit or direct words. The dissent suggests that plaintiff's retained expert might provide "a basis for the jury to conclude that defendant undertook an obligation to include 'a simple phrase' in the trust or will that would provide that a replacement home would go to plaintiff—an implicit promise or duty to include a provision in the trust or will that would accomplish the client's objective." 255 Or App at 174 (Nakamoto, J., dissenting). But, as previously explained, the retained expert had no personal knowledge of defendant's agreement with plaintiff's grandmother; at most, plaintiff's expert could testify as to what defendant,

employing the skill and care customary among lawyers, should have promised and accomplished under the circumstances.

Whether defendant *should have* undertaken a particular obligation (such as including a "simple phrase" in a trust or will) is different, however, from whether he *in fact* undertook that obligation. Because plaintiff is not a party to the contract between defendant and his client, plaintiff cannot rely on implicit promises or duties that arise from the standard of care exercised in the legal community. Instead, plaintiff must establish a basis in fact or in law—*independent of the professional standard of care*—for the implication that defendant promised to include a provision in her grandmother's trust or will that would ensure that plaintiff obtained the Canyon Court house or any replacement home. Plaintiff did not carry that burden on summary judgment, and the court correctly granted summary judgment on her claims.

Affirmed.

**NAKAMOTO, J.,** dissenting.

Two of the items typically in focus when a motion for summary judgment is filed under ORCP 47 C are the relevant pleadings, which define potential issues for consideration, and the evidence in support of the pleadings. Unsurprisingly, this appeal hinges on two things: one, what plaintiff pleaded as the agreement between defendant attorney[7] and his client, Dorothy DeBerry—plaintiff's grandmother—and the professional duties defendant undertook on behalf of his client; and two, what evidence plaintiff adduced in support of her claims of breach of contract and professional negligence, as alleged in her amended complaint. In her complaint, plaintiff alleged an implied agreement between defendant and his client, an allegation the majority dismisses because of a statement in plaintiff's reply brief. As a result, the majority's analysis of the evidence that plaintiff used to oppose the summary judgment motion fails to fully address all of the allegations

---

[7] References to defendant include references to his law firm, Steven R. Summers, P.C., also a defendant.

presented in the pleadings. I disagree that we should ignore the implied agreement that plaintiff alleged. I conclude that defendant failed to meet his burden of proof at the summary judgment stage, and I would reverse and remand a portion of both the negligence and contract claims for further proceedings.

I agree with the majority concerning the law that applies. As we recently explained in *Frakes v. Nay*, 254 Or App 236, 295 P3d 94 (2012), the Supreme Court's decisions in *Hale v. Groce*, 304 Or 281, 744 P2d 1289 (1987), and *Caba v. Barker*, 341 Or 534, 145 P3d 174 (2006), require a plaintiff who is not a party to the contract between the attorney and testator to "prove (1) that the attorney actually made an *express or implied promise* to the testator (2) under circumstances that indicate that the testator intends to give the plaintiff the benefit of the promised performance" in order to "sustain a negligence claim for financial loss." *Frakes*, 254 Or App at 267 (emphasis added). As the Supreme Court explained in *Hale*, a lawyer's failure to perform an agreement to "undertake to make a particular disposition by means specified by the client (for instance, in trust, or by a gift of identified property), or to accomplish the intended gift by specified means of the lawyer's choosing," regardless of negligence, "would be a breach of contract." 304 Or at 286. I agree with the majority that the Supreme Court's decision in *Caba* allows a nonclient to assert claims for breach of contract and negligence against an attorney on the basis of an implied promise that is factually or legally supportable. 255 Or App at 161; *see Caba*, 341 Or at 540. Thus, I also agree with the majority that "*Hale* and *Caba* stand for the proposition that an essential element of a breach of contract or negligence claim by a nonclient plaintiff against an attorney who prepared a testamentary instrument is the existence of a promise by the attorney—either express or implied—to include specific provisions to satisfy certain objectives of the client for the benefit of the plaintiff." 255 Or App at 161.[8]

---

[8] I do not understand the majority's holding to be in conflict with our holding in *Frakes*. That is, it is possible for a nonclient plaintiff to have a claim against an attorney who "impliedly promised to obtain a particular result" through estate planning for the client by breaching the implied agreement with the client or by negligently failing to perform the promise to the client. Thus, for example, an

I do disagree, however, with the application of the law to the facts of this case. In paragraph 9 of the complaint, plaintiff alleged that the agreement between defendant and her grandmother as follows:

"[1] The Lawyer agreed and contracted with his client, the Grandmother, which also created a duty to her Granddaughter as the intended beneficiary, to prepare the Trust and Will so the Granddaughter would receive the home and any replacement home Grandmother intended her Granddaughter to receive upon her death. [2] The Lawyer also agreed he would use his best professional efforts to prepare Grandmother's Trust and Will so the Granddaughter would receive the home or any replacement home. [3] The Lawyer assumed the duty of insuring the documents he prepared would give the home or a replacement home to the Granddaughter to achieve that result upon her death. The Lawyer's duties extended to the Granddaughter as an intended beneficiary."

Through paragraph 9, plaintiff alleged a series of promises by or duties of defendant.

First, plaintiff alleged that defendant agreed to prepare his client's trust and will so that plaintiff would receive the Canyon Court home and any replacement home, which his client intended for plaintiff to receive upon her death. In doing so, plaintiff alleged an express agreement by defendant. Paragraph 9 of plaintiff's complaint does not state that defendant's client had agreed with defendant that he would place a specific provision in the trust (or her will), a focus of defendant's argument in the trial court and on appeal. Rather, plaintiff alleges that defendant and his client agreed that he would prepare her trust and will so that he would achieve a particular result for his client, namely, that plaintiff would receive the Canyon Court home and any replacement home.

Second, plaintiff alleged that defendant agreed that, in preparing the will and trust, "he would use his best professional efforts" to accomplish his client's desired result, namely, plaintiff "would receive the home or any replace-ment home." A breach of that kind of promise incorporates

---

expert might testify concerning promises that an attorney impliedly makes to a client in particular circumstances.

by reference, or by implication, a general standard of skill and care to which the defendant would be bound independent of the contract, *see Hale*, 304 Or at 287 ("[T]he lawyer's promise might be to use his best professional efforts to accomplish the specified result with the skill and care customary among lawyers in the relevant community."), and would be an actionable professional negligence claim if brought by the client. *See id.* (noting that sort of promise—to use skill and care customary in the community—"arises only from the professional obligation to the client" and, therefore, "does not threaten to divide a lawyer's loyalty" between the client and a third party); *accord Caba,* 341 Or at 541 n 3 (explaining that the plaintiffs, residual legatees who were not parties to the attorney's contract with the testator, "would not be able to sustain their claims under the more general, professional negligence standard"). If that were the only allegation, then the trial court would have been required to enter a judgment dismissing plaintiff's claim. *See Frakes*, 254 Or App at 267 ("Standing alone, an attorney's promise to the testator to use the skill and care customary among lawyers in the relevant community is not a promise to obtain a particular result for the plaintiff's benefit that will support a third-party negligence claim for financial loss.").

Third, plaintiff alleged that defendant assumed a duty to his client of "insuring the documents he prepared would give the home or a replacement home to [plaintiff] to achieve that result upon [his client's] death." Thus, the alleged duty is similar to the alleged express promise defendant made to his client.

In paragraph 10 of the complaint, plaintiff alleged that defendant breached the agreement with his client and breached his obligation to plaintiff as the intended beneficiary in a number of specific ways. Plaintiff alleged that defendant "did not include a simple phrase" in the trust or will "that would provide any replacement home bought by Grandmother for the Canyon Court home for her granddaughter would also go to her Granddaughter"; did not advise his client that if she sold the Canyon Court home to buy a replacement home for plaintiff, the trust or will would

need to be amended to describe the new home; "did not keep in contact with the Grandmother, particularly given her age and lack of knowledge about these legal matters, to learn Grandmother had purchased a replacement home," which would have led defendant to change the trust or will; and "did not reasonably advise and monitor the Grandmother's personal or Trust assets to insure the Trust received" her assets and to "provide for correct administration of the Trust." In paragraph 13 of the complaint, plaintiff similarly specified that defendant was negligent and breached his duties to his client and to plaintiff as a third-party beneficiary.

The breaches specified in paragraphs 10 and 13 of the complaint can only be understood as breaches of implied promises by defendant to plaintiff. Even though plaintiff stated in her reply brief that she did not "plead an implied promise," plaintiff does not allege that defendant expressly promised his client to do any of the things she alleges constituted breaches of the attorney-client agreement in paragraphs 10 and 13.

Plaintiff's arguments are consistent with that view of the complaint. Plaintiff argued in the trial court, as she does in this court, that the defense has an "unreasonably narrow view" that, unless there was evidence of an express agreement in which defendant's client said that she wanted the Canyon Court house to go to plaintiff and, if she ever sold it, she wanted replacement homes to go to plaintiff, there was no claim. In the trial court, plaintiff argued that defendant had failed to address "the four specifications" in paragraph 10 of the complaint when it came to her expert opinion affidavit under ORCP 47 E, which established a need for trial. Plaintiff further argued below that an attorney who is directed to give a gift to a beneficiary does not simply agree to do that and that there was no evidence that the contract "did not include the things we have referred to as being part of the obligation."

When considering whether defendant met his burden to establish that there are no genuine issues of material fact for trial, the majority appears to have accepted defendant's argument that plaintiff only alleged an express agreement between defendant and his client in paragraph 9 of the

complaint. In its description of the facts, the majority states that the "alleged contractual promise was that defendant would include a provision in [his client's] revocable trust or will that would achieve [his client's] objective to distribute to plaintiff the Canyon Court home or any home purchased by [his client] to replace the Canyon Court home." 255 Or App at 156 (emphasis omitted). The majority does not analyze whether plaintiff is entitled to a trial on her allegations of an implied agreement. Considering all of the allegations in the complaint, plaintiff's arguments on the merits, the affidavit of plaintiff's counsel under ORCP 47 E that she has a retained expert who will testify at trial on disputed issues, and the applicable law, I conclude that plaintiff has a right to a trial on portions of her claims for negligence and breach of contract.

The majority concludes that plaintiff's expert could not possibly testify concerning an agreement between defendant and his client "that he would include a provision in the trust ensuring that plaintiff would receive the Canyon Court home *or* any replacement home," 255 Or App at 162 (emphasis in original), because plaintiff does not assert that her expert "has personal knowledge that defendant made such an agreement" with his client, *id.* at 163. The majority's conclusion rests on the assumption that a single express promise is at issue in the case. Because I disagree with that premise, and because plaintiff contends that, in addition to her evidence of her grandmother's intent, her expert will provide a basis for the jury to conclude that defendant impliedly promised to include "a simple phrase" in the trust or will that would provide that a replacement home bought by his client for the Canyon Court home would go to plaintiff—a promise, implied in fact, to include a provision in the trust or will that would accomplish the client's objective—I would permit a trial on that specification of plaintiff's breach of contract and negligence claims. Accordingly, I respectfully dissent.