**Filed: March 7, 2013**

IN THE SUPREME COURT OF THE STATE OF OREGON

JACK DOE 1, an individual proceeding
under a fictitious name; JACK DOE 2,
an individual proceeding under a
fictitious name; JACK DOE 3, an
individual proceeding under a fictitious
name; JACK DOE 4, an individual
proceeding under a fictitious name;
JACK DOE 5, an individual proceeding
under a fictitious name; JACK DOE 6,
an individual proceeding under a
fictitious name; and JACK DOE 7, an
individual proceeding under a fictitious name,

                                                              Plaintiffs-Appellants,
                                                              Petitioners on Review,

          v.

LAKE OSWEGO SCHOOL DISTRICT,
an Oregon public school district, authorized
and chartered by the laws of the State of Oregon,

                                                              Defendant-Respondent,
                                                              Respondent on Review,

and

JUDD JOHNSON, an individual,

                                                              Defendant-Respondent.

(CC CV-0802-0740; CA A140979; SC S059589)

On review from the Court of Appeals.*

Argued and submitted September 20, 2012; resubmitted January 7, 2013.

Kelly Clark, O'Donnell Clark & Crew LLP, Portland, argued the cause for petitioners on review. Kathryn H. Clarke, Portland, filed the brief for petitioners on review. With her on the brief were Kelly Clark and Kristian Roggendorf.

Timothy R. Volpert, Davis Wright Tremaine LLP, Portland, argued the cause and filed the brief for respondent on review. With him on the brief was David A. Ernst.

Erin K. Olson, Portland, filed the brief for *amici curiae* Survivor's Network of those Abused by Priests, National Center for Victims of Crime, Cardozo Advocates for Kids, Oregon Abuse Advocates and Survivors in Service, Crime Victims United, KidSafe Foundation, Survivors for Justice, Coalition of Jewish Advocates for Children, Jewish Parents for Safe Yeshivas, National Black Church Initiative, Child Victims Voice, Stop the Silence: Stop Child Sexual Abuse, Inc., Jewish Board of Advocates for Children, and National Child Protection Training Center.

Lisa T. Hunt, Portland, filed the brief for *amicus curiae* Oregon Trial Lawyers Association.

Before Balmer, Chief Justice, and Kistler, Walters, Linder, Brewer, and Baldwin, Justices.**

WALTERS, J.

The decision of the Court of Appeals is reversed. The limited judgment of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings.

*Appeal from Clackamas County Circuit Court,
 James C. Tait, Judge.
 242 Or App 605, 259 P3d 27 (2011).

**Landau, J., did not participate in the consideration or decision of this case.

WALTERS, J.

At issue in this civil action is a trial court's order dismissing as untimely plaintiffs' claims against a public school district. Plaintiffs alleged that when they were in the fifth grade, a teacher who worked for the district sexually abused them, but that they did not know that their teacher's touching was abusive when it occurred. For the reasons that follow, we conclude that the trial court erred in granting the school district's ORCP 21 motion to dismiss plaintiffs' claims. We reverse the contrary decision of the Court of Appeals and the limited judgment of the trial court, and we remand for further proceedings.

The facts relevant to our decision are those set forth in plaintiffs' Third Amended Complaint.[1] Plaintiffs have not proved those facts to be true but, for purposes of deciding whether the trial court erred in granting defendant's ORCP 21 motion to dismiss, we assume their veracity. *See Juarez v. Windsor Rock Products, Inc.*, 341 Or 160, 163, 144 P3d 211 (2006) (on review of motion to dismiss, court assumes the truth of well-pleaded facts).

Plaintiffs are seven adult men who were born between 1957 and 1970. Between 1968 and 1984, each plaintiff was a fifth-grade student in a class taught by Johnson. During that time period, Johnson was employed by the Lake Oswego School

---

[1] The trial court dismissed the claims that plaintiffs asserted against the school district in their Third Amended Complaint. We take the facts relevant to our decision from the claims that plaintiffs labeled as claims for "Sexual Abuse of a Child."

District (defendant), a governmental entity.[2]  While serving as plaintiffs' teacher, Johnson engaged in a "grooming process" that involved befriending plaintiffs, gaining their trust, admiration and obedience, and conditioning them to respect Johnson as a person of authority.  As part of that "grooming process," Johnson also befriended plaintiffs' families and gained their trust, their permission to spend substantial periods of time with plaintiffs, and the benefit of their instruction to their sons to respect and comply with Johnson's authority and requests.  Through use of the grooming process, Johnson intentionally engaged in the following conduct:

> "fondling [Jack Doe 1's] genitals inside his clothing while in the classroom in front of other students"; "fondling [Jack Doe 2 and 3's] genitals and buttock[s] [while they] stood in the classroom in front of other students"; "fondling [Jack Doe 4's] genitals outside of his clothing while in the classroom in front of other students"; "fondling [Jack Doe 5's] genitals inside his clothing and 'assisting' [Jack Doe 5] in urinating on several occasions"; and "fondling [Jack Doe 6 and 7's] genitals[.]"[3]

Plaintiffs alleged that those acts constituted harmful or offensive touching that caused them to suffer debilitating physical, mental, and emotional injury.  However,

---

[2]  Plaintiffs brought their action against both Johnson and the Lake Oswego School District and both are defendants in this case.  However, because it is the trial court's order dismissing plaintiffs' claims against the district that is at issue on review, we refer to the school district as "defendant" and to Johnson by name.

[3]  Plaintiffs also alleged that Johnson engaged in intentional conduct "resulting in *some or all* of the following:  physical injury, mental injury, rape, sexual abuse, and sexual exploitation[.]"  (Emphasis added.)  Plaintiffs immediately followed those allegations with the specific allegations set out in the text above.  Because the parties base their arguments on the specific allegations set out in the text above, and because plaintiffs alleged that Johnson engaged in *some* but not necessarily *all* of the conduct set forth in their general allegations, we do not consider those general allegations in our analysis.

2

plaintiffs alleged, they did not discover their injuries at the time of Johnson's touching.

At that time, plaintiffs alleged, they did not

"comprehend the abusive nature -- and therefore could not perceive the harm -- of Johnson's touching due to the obedience, admiration, respect, and esteem which [plaintiffs] had for Johnson * * *. [Plaintiffs were] unable to recognize that [they] had been harmed at the time of the abuse, because the touching * * * was similar enough to the non-tortious touching by Johnson that occurred during and was part of the grooming process that, as * * * young boy[s, they were] confused by it and unable to discern at the time that the touching was inappropriate or harmful."

Plaintiffs alleged that the earliest date that any one of them discovered his injuries was in November 2006; the latest was in March 2008.

Plaintiffs commenced this action in February 2008. Plaintiffs labeled some of their claims as claims for "Sexual Abuse of a Child" and others as claims for "Intentional Infliction of Emotional Distress."[4] Plaintiffs brought those claims under the Oregon Tort Claims Act (OTCA) and sought to hold defendant vicariously liable for Johnson's acts. One plaintiff, Jack Doe 6, also sought to hold defendant liable for its own allegedly negligent acts. Plaintiff Jack Doe 6 alleged that, in 1982 or 1983, defendant became aware that Johnson had molested a boy away from school grounds and thereafter was negligent in failing to terminate or supervise Johnson. Plaintiff Jack Doe 6 alleged that he reasonably did not discover defendant's alleged negligence until March 2008.

---

[4] Plaintiffs also alleged claims for violation of their civil rights under 42 USC section 1983. The trial court granted defendant's motion to dismiss those claims and the Court of Appeals affirmed. *Doe v. Lake Oswego School District*, 242 Or App 605, 621-23, 259 P3d 27 (2011). The Court of Appeals concluded that plaintiffs had failed to plead facts necessary to constitute those claims -- in particular, facts alleging that defendant had acted pursuant to a policy or custom of "deliberate indifference." Plaintiffs do not challenge that conclusion in this court.

3

Defendant filed a motion under ORCP 21[5] to dismiss plaintiffs' claims, asserting that plaintiffs had failed provide notice of claim or to commence their action within the time provided by ORS 30.275.[6] Defendant argued that it appeared from the face of plaintiffs' complaint that the latest that Johnson's touching had occurred was in

[5] ORCP 21 A provides, in part:

"Every defense, in law or fact, to a claim for relief in any pleading, whether a complaint, counterclaim, cross-claim or third party claim, shall be asserted in the responsive pleading thereto, except that the following defenses may at the option of the pleader be made by motion to dismiss: * * * (9) that the pleading shows that the action has not been commenced within the time limited by statute."

[6] ORS 30.275, provides, in part:

"(1) No action arising from any act or omission of a public body or an officer, employee or agent of a public body within the scope of ORS 30.260 to 30.300 shall be maintained unless notice of claim is given as required by this section.

"(2) Notice of claim shall be given within the following applicable period of time, not including the period, not exceeding 90 days, during which the person injured is unable to give the notice because of the injury or because of minority, incompetency or other incapacity:

"(a) For wrongful death, within one year after the alleged loss or injury.

"(b) For all other claims, within 180 days after the alleged loss or injury.

"* * * * *

"(9) Except as provided in ORS 12.120, 12.135 and 659A.875, but notwithstanding any other provision of ORS chapter 12 or other statute providing a limitation on the commencement of an action, an action arising from any act or omission of a public body or an officer, employee or agent of a public body within the scope of [the OTCA] shall be commenced within two years after the alleged loss or injury."

4

1984, and that plaintiffs' claims necessarily accrued at that time. Therefore, defendant contended, because plaintiffs concededly had not given notice of claim or filed their action within the requisite period thereafter, their claims were untimely and should be dismissed. Plaintiffs countered that they had pleaded facts from which a jury could find that they reasonably had not discovered the abusive or harmful nature of Johnson's conduct at the time it occurred. Therefore, plaintiffs argued, they had alleged facts from which a jury could find that their claims accrued on the dates that they alleged they had discovered their injuries, not on the date of Johnson's alleged touching. Plaintiffs also argued that the OTCA was unconstitutional if it precluded their claims.[7]

The trial court ultimately agreed with defendant that plaintiffs must be deemed to have discovered the facts necessary to their claims at the time of the touching. The court concluded, "I am completely ruling, as a matter of law * * * that there is no 10- to 13-year-old child, other than one, perhaps, that's mentally retarded * * * who would not understand that this kind of touching is wrong." The trial court also rejected plaintiffs' argument that the OTCA was unconstitutional as applied to them. The trial court granted defendant's ORCP 21 motion to dismiss and entered a limited judgment in its favor.[8]

---

[7] In their Third Amended Complaint, plaintiffs included a claim for declaratory judgment and alleged that, if the court accepted defendant's argument that their claims were time-barred under the OTCA, the OTCA was unconstitutional as applied to them.

[8] The limited judgment resolved all of plaintiffs' claims against defendant district. The limited judgment did not resolve plaintiffs' claims against Johnson. The trial court entered an order staying those claims.

Plaintiffs appealed, and the Court of Appeals affirmed. *Doe v. Lake Oswego School District*, 242 Or App 605, 259 P3d 27 (2011). The court held:

> "Where, as here, a plaintiff seeking damages for sexual abuse under the OTCA knew that the sexual touching occurred as well as who did the touching, there is no basis to say that the plaintiff did not know of or could not reasonably have discovered the injury -- that is, the legally cognizable harm. Accordingly, we conclude that the trial court correctly determined that the allegations in plaintiffs' complaint are insufficient to prevent the application of the OTCA's time limitations with respect to the sexual battery and IIED claims and those claims were properly dismissed."

*Id.* at 616 (footnote omitted). As to Jack Doe 6's negligence claim, the court held that plaintiff had failed to raise a distinct argument regarding the timeliness of that claim, and the court therefore declined to address it on appeal. *Id.* at 616-18. The court also rejected without discussion plaintiffs' challenge to the constitutionality of the OTCA as applied.[9] Plaintiffs sought, and we allowed, review.

To meet the requirements of the OTCA, a plaintiff who is a minor at the time of an alleged loss or injury must give notice of claim within 270 days and must commence the action within two years following the "alleged loss or injury."[10] ORS

---

[9] However, the Court of Appeals required a different form of limited judgment than had been entered by the trial court. The Court of Appeals vacated the trial court's limited judgment dismissing plaintiffs' claim for declaratory relief and required that the trial court instead enter a limited judgment for defendant declaring that "the OTCA's statute of limitations provisions do not violate the state or federal constitution." *Doe*, 242 Or App at 618 n 4.

[10] Plaintiffs do not argue that their claims were tolled pursuant to ORS 12.160 and we do not consider or decide whether the minority tolling provisions in that statute apply to a claim under the OTCA. *See Baker v. City of Lakeside*, 343 Or 70, 77, 164 P3d 259 (2007) (discussing applicability of ORS 12.160 to claims brought under the OTCA as context for interpretation of ORS 12.020).

6

30.275. In *Adams v. Oregon State Police,* 289 Or 233, 239, 611 P2d 1153 (1980), this court construed those terms and held that the limitations period for an OTCA claim for "alleged loss or injury" does not begin to run until a "plaintiff has a reasonable opportunity to *discover his injury* and the identity of the party responsible for that injury." (Emphasis added.) That rule, the court explained, avoids the mockery that would follow if the law were to say to one who had been wronged, "[y]ou had a remedy, but before the wrong was ascertainable to you, the law stripped you of your remedy." *Id.* at 238 (quoting *Berry v. Branner,* 245 Or 307, 312, 421 P2d 996 (1966)).

In *Gaston v. Parsons,* 318 Or 247, 252-56, 864 P2d 1319 (1994), this court considered the meaning of the word "injury" in the context of a different statute -- ORS 12.110(4) -- which provides that a medical malpractice action must be commenced within two years from the date that an "injury" is or should have been discovered.[11] The court concluded that the legislature had used the word "injury" to mean "what formed the basis for an action, *i.e.*, legally cognizable harm," and that "harm is legally cognizable if it is the result of tortious conduct." 318 Or at 254-55. Thus, the court explained, as used in ORS 12.110(4), an "injury" is discovered when a plaintiff knows or should have known

---

[11]     ORS 12.110(4) provides, in relevant part:

"An action to recover damages for injuries to the person arising from any medical, surgical or dental treatment, omission or operation shall be commenced within two years from the date when the *injury* is first *discovered* or in the exercise of reasonable care should have been discovered."

(Emphasis added.)

7

of the existence of three elements: (1) harm; (2) causation; and (3) tortious conduct. 318 Or at 255. The word "injury" has the same meaning in claims brought under the OTCA. *Johnson v. Mult. Co., Dept. Community Justice,* 344 Or 111, 118, 178 P3d 210 (2008) (so stating).[12]

In this case, defendant acknowledges the applicability of the discovery rule and contends that the trial court correctly followed that rule in dismissing plaintiffs' claims. According to defendant, plaintiffs necessarily discovered the facts that gave rise to legally cognizable claims for the intentional tort of battery no later than 1984, the last date on which Johnson touched any one of them.

Although plaintiffs did not expressly label any of their claims as claims for battery, they agree that the facts that they alleged in the claims that they labeled as claims for "Sexual Abuse of a Child" may properly be considered as stating claims for that intentional tort.[13] Plaintiffs argue, however, that they did not necessarily discover the facts necessary to that tort by 1984. At the time that Johnson touched them, plaintiffs assert, they reasonably did not recognize that his touching was abusive. In *Gaston* terms, plaintiffs argue that, by 1984, they reasonably had not discovered the tortious nature of Johnson's conduct.

---

[12] In *Johnson*, the court explained that those three elements of the discovery rule -- harm, causation, and tortious conduct -- also incorporate a fourth element: the probable identity of the tortfeasor. 344 Or at 118 n 2. *Accord T. R. v. Boy Scouts of America*, 344 Or 282, 292, 181 P3d 758 (2008).

[13] Plaintiffs also argue that the claims that they labeled as claims for "Sexual Abuse of a Child" may be viewed as negligence claims alleging a breach of fiduciary duty. For reasons that we explain later in this opinion, we do not reach that argument.

The parties' arguments confine the scope of our analysis; the legal question for our consideration on review is whether plaintiffs' allegations that Johnson fondled their genitals in and before 1984 require the conclusion that their battery claims accrued by that date. Defendant does not contend that plaintiffs' battery claims necessarily accrued at some date after 1984 or challenge plaintiffs' allegations that they did not discover their injuries until 2006 at the earliest. Rather, defendant argues that, because plaintiffs alleged that Johnson's touching occurred in or before 1984, plaintiffs also knew or should have known the facts that give rise to a battery claim by that date. We therefore begin our analysis by considering the elements of such a claim.

In *Bakker v. Baza'r, Inc.,* 275 Or 245, 249, 551 P2d 1269 (1976), this court set out the elements of a battery claim:

"To constitute liability for a battery, the conduct which brings about the harm must be an act of volition on the actor's part, and the actor must have intended to bring about a harmful or offensive contact or put the other party in apprehension thereof. 1 Harper & James, *The Law of Torts* 215-17, § 3.3 (1956). It is not necessary that the contact do actual physical harm -- it is sufficient if the contact is offensive or insulting. Prosser, *Law of Torts* 36, § 9 (4th ed 1971)."

As discussed in *Harper, James and Gray on Torts*, battery redresses injury both to an individual's physical integrity and to an individual's dignitary interests:

"Involved in the tort of battery are two interests of personality: first, the interest in the physical integrity of the body, that it be free from harmful contacts; second, the purely dignitary interest in the body that it be free from offensive contact."

Fowler V. Harper, Fleming James, Jr., and Oscar S. Gray, 1 *Harper, James and Gray on Torts* § 3.2, 307 (3d ed 2006). Prosser explains the reason:

9

"The original purpose of the courts in providing the action for battery undoubtedly was to keep the peace by affording a substitute for private retribution. The element of personal indignity involved always has been given considerable weight. Consequently, the defendant is liable not only for contacts which do actual physical harm, but also for those relatively trivial ones which are merely offensive and insulting."

W. Page Keeton *et al.*, *Prosser and Keeton on the Law of Torts* § 9, 41 (5th ed 1984)

(footnotes omitted).

The *Restatement (Second) of Torts* § 18(1) (1965) also recognizes that battery may be either (or both) of two types -- battery that causes "harmful contact" or battery that causes "offensive contact." As used in the *Restatement*, "harmful contact" includes physical impairment, physical pain, or illness. *Restatement* § 15. "Offensive contact" is defined as contact that offends a reasonable sense of personal dignity. *Restatement* § 19. Thus, to be tortious, a defendant's physical contact must be harmful or offensive in nature. In this case, defendant does not argue that plaintiff necessarily suffered physical impairment, physical pain, or illness by 1984; defendant argues that plaintiff necessarily suffered offensive contact by that date. Therefore, we address the "offensive contact" element of a claim for battery.

Defendant argues that plaintiffs had to have known that Johnson's touching was offensive at the time that it occurred: "Reaching under a fifth grader's clothing and fondling his genitals in front of a class of students is offensive to a reasonable sense of personal dignity as a matter of law." Further, defendant argues, the "[f]ailure of a child to apprehend the offensive nature of the contact does not change the fact that society, and therefore the law, considers the contact inherently harmful. What plaintiffs' teacher

10

allegedly did was offensive and immediately caused cognizable harm." Therefore, in defendant's view, plaintiffs' battery claims were legally cognizable, and the OTCA limitations periods began to run, when Johnson's touching occurred -- by 1984 at the latest.

Plaintiffs accept that intentional action that results in offensive contact gives rise to a battery claim, but respond that they reasonably did not recognize Johnson's conduct as offensive when they were fifth-graders in his classroom. Plaintiffs argue that defendant fails to separately analyze the facts that give rise to a battery claim and the different question of when plaintiffs knew or should have known those facts. According to plaintiffs, the question here is not whether plaintiffs pleaded facts sufficient to state a claim for relief, but whether plaintiffs discovered or must be deemed to have discovered those facts when Johnson's conduct occurred. Plaintiffs contend that, although Johnson's conduct was indeed offensive, they did not recognize it as such by 1984. They contend that they did not comprehend "the abusive nature" of Johnson's touching due to the "obedience, admiration, respect, and esteem" that they had for Johnson. In addition, they contend that, because the touching was "similar enough to the non-tortious touching by Johnson that occurred during and as part of the grooming process," they, as young boys, were confused by it and were unable to discern at the time that the touching was "inappropriate or harmful." Plaintiffs argue that, under those alleged circumstances, it was error for the trial court to dismiss their claims as untimely.

We agree with plaintiffs that defendant mistakenly conflates the question of whether Johnson's alleged conduct was in fact offensive with the question whether

11

plaintiffs, as fifth-graders subjected to Johnson's grooming tactics, recognized or must be deemed to have recognized that fact when the touching occurred. Even though the facts that give rise to a claim have occurred, the applicable limitations period does not begin to run until the plaintiff discovers or should have discovered those facts. And the facts that a plaintiff must have discovered or be deemed to have discovered include not only the conduct of the defendant, but also, under *Gaston*, the tortious nature of that conduct.

In *Gaston,* the facts that gave rise to the plaintiff's negligence claim had occurred when the defendant completed the plaintiff's surgery. The defendant had operated, committed alleged negligence, and caused the plaintiff harm. However, the limitations period did not begin to run until the plaintiff knew or should have known those facts. The plaintiff contended that, even though his left arm was numb and did not function after surgery, he reasonably did not know that there was a substantial possibility that the defendant had acted tortiously. The court held that whether the plaintiff's failure to comprehend the nature of the defendant's conduct was reasonable was a question of fact that must be determined by the trier of fact. 318 Or at 257. The court explained:

"Whether a reasonable person of ordinary prudence would be aware of a substantial possibility of tortious conduct is a question of fact that depends upon the nature of the harm suffered, the nature of the medical procedure, and other relevant circumstances. The nature of the harm suffered is important in determining whether a reasonable person would have been aware of a substantial possibility of tortious conduct. * * * A reasonable person that experiences symptoms that are incidental to a particular medical procedure may not be aware that he or she has been a victim of tortious conduct * * *."

*Id.* at 256-57. Similarly, in *Doe v. American Red Cross*, 322 Or 502, 513, 910 P2d 364 (1996), the court held that the limitations period did not begin to run when the facts

12

giving rise to a claim for negligence occurred: when the defendant provided the plaintiff's husband with blood for a transfusion, allegedly negligently, and the husband contracted a serious disease as a result. The limitations period did not begin to run until the plaintiff knew or should have known that defendant may have acted tortiously -- a question of fact that precluded summary judgment for the defendant. *Id*. at 515.

As those cases demonstrate, knowledge that an actor committed an act that resulted in harm is not always sufficient to establish that a plaintiff also knew that the act was tortious. And, as those cases also demonstrate, whether a plaintiff knew or should have known the elements of a legally cognizable claim, including the tortious nature of a defendant's act, is generally a question of fact determined by an objective standard:

> "The discovery rule applies an objective standard -- how a reasonable person of ordinary prudence would have acted in the same or a similar situation. The discovery rule does not require actual knowledge; however, mere suspicion also is insufficient. The statute of limitations begins to run when the plaintiff knows or, in the exercise of reasonable care, should have known facts that would make a reasonable person aware of a substantial possibility that each of the elements of a claim exists."

*Kaseberg v. Davis Wright Tremaine, LLP*, 351 Or 270, 278, 265 P3d 777 (2011) (internal citations omitted). In applying that standard, a court must consider the facts from the perspective of a reasonable person in the circumstances of the plaintiff. *T. R. v. Boy Scouts of America*, 344 Or 282, 297-98, 181 P3d 758 (2008). Those circumstances include, but are not limited to, plaintiff's status as a minor , *id.* at 297, the relationship between the parties, *Kaseberg*, 351 Or at 279, and the nature of the harm suffered. *Gaston*, 318 Or at 256. A court cannot decide that question as a matter of law unless the only conclusion that a reasonable trier of fact could reach is that the plaintiff knew or

13

should have known the critical facts at a specified time. *Kaseberg,* 351 Or at 278 (so stating); *T. R.,* 344 Or at 296 (same).

The same principles are applicable here. Just as the negligent character of a defendant's conduct is not always immediately apparent, the line between offensive and socially acceptable touching also may be difficult to ascertain:

> "The relationship of the parties, the customs prevailing in the particular community, and the attitude of the actor in the circumstances are important in determining whether a particular contact is a battery. Thus, persons on close and intimate terms will engage in conduct toward one another that would be intolerable between strangers. Frequently the question of battery or no battery will turn on the issue of implied consent. Familiarities not justified by the peculiar association of the parties must conform to the usages of the community and contacts not thus sanctioned may be actionable batteries. Although the state of mind of the actor may make offensive contact not otherwise so and, conversely, make inoffensive acts that, if done in anger, would be highly objectionable, nevertheless even well-intentioned acts, such as practical jokes or horseplay, may be actionable if they exceed the bounds of tolerable taste. Thus, a pat or similar display of affection by a sincere and even passionate lover may be highly offensive to an unresponsive woman who has not consented thereto, and an elephantine sense of humor may be responsible for contacts that are offensive to one with a more delicate sensitivity."

Harper, 1 *Harper, James and Gray on Torts* § 3.2 at 310-11 (footnotes omitted). Just as a plaintiff's discovery of the negligent character of a defendant's conduct is a question of fact requiring consideration of the relationship between the parties and the nature of the harm, so too are those factors relevant to a discovery of whether a defendant has engaged in offensive contact.

In this case, defendant argues that the trial court was correct that the only conclusion that a reasonable trier of fact could reach was that, in 1984, plaintiffs knew or should have known that Johnson's touching was offensive. Plaintiffs respond that, given

14

their status as minors, their relationship with Johnson, and the nature of the harm that his acts inflicted, a jury could find from the facts that they alleged that they reasonably did not know that Johnson's acts were offensive when they occurred. We agree with plaintiffs. Although it is true, as defendant argues, that in the 1970s and 1980s many fifth-graders would have known that Johnson's touching was offensive, plaintiffs alleged facts from which a jury could find that these plaintiffs reasonably did not reach that conclusion at the time of Johnson's actions. Plaintiffs alleged that Johnson engaged in a "grooming process" that included gaining the support of plaintiffs' families so that they would counsel their sons to respect his authority and comply with his instructions and requests. Plaintiffs alleged that, as a result, they had such admiration and respect for Johnson, and the wrongful touching in which Johnson engaged was so similar to the non-tortious touching that they had experienced during the grooming process that, as young boys, plaintiffs were confused by Johnson's conduct and unable to discern that the touching was inappropriate.

In *Johnson v. Mult. Co., Dept. Community Justice*, this court addressed whether a plaintiff who had been sexually assaulted should have learned from newspaper articles that the defendant's negligent supervision of a sex offender -- her assailant -- had contributed to her injury. 344 Or at 113. The court considered the plaintiff's particular circumstances in concluding that, even though published media reports indicated that the defendant may have been negligent, the plaintiff had raised a question of fact about whether she knew or should have known of the defendant's potentially tortious conduct. *Id*. at 122-23. The court reasoned:

15

"In the end, defendant's proposal -- that all plaintiffs should be deemed to know all information relating to their claim that has been published in the local media -- involves a leap of faith that we are not prepared to make."

*Id.* at 122.

In this case, we are similarly unprepared to make the leap of faith for which defendant contends -- that in 1984, all fifth-graders must be deemed to have known that a trusted teacher who had touched them in socially acceptable ways and whom they had been conditioned to respect and obey had crossed a line and touched them in a new way that society abhorred.

In stating that conclusion, we emphasize that plaintiffs' complaint does no more than allege facts that they must prove. Defendant may challenge the truth of plaintiffs' allegations at many remaining junctures, and our decision does not foreclose it from doing so. We also do not mean to imply that a limitations period does not begin to run until a plaintiff knows the full extent of the harm that has been inflicted or becomes aware of the legal implication of facts rather than of the facts themselves. Defendant is correct that, if a plaintiff knows that he or she has suffered some harm and knows that it is the result of tortious conduct, an argument that the plaintiff did not know the full extent of the harm or that those facts had legal significance will be of no avail. That is not the case here, however. Here, plaintiffs contend that they did not know a fact necessary to their battery claims -- that, at the time that it occurred, Johnson's conduct was offensive.

We also reject defendant's final, statutory argument. Defendant asserts that ORS 12.117, which provides a statute of limitations for child abuse claims brought

16

against private actors, is indicative of a legislative policy that should govern our decision in this case.[14] ORS 12.117 provides that an individual who was a minor when he or she was subjected to "child abuse" by a private actor may bring an action for damages until he or she reaches age 40 or within five years from the date that the individual discovered or should have discovered the causal connection between the injury and the child abuse, whichever is longer. That statute does not explicitly address "child abuse" committed by public actors, deprive individuals abused by public actors of existing remedies, or preclude the application of the discovery rule in battery claims against public actors. That the legislature saw fit to *grant* individuals subjected to "child abuse" by private actors at least five years from the date of discovery of the causal connection between the injury and the abuse to bring their claims does not indicate a legislative intent to *deprive* others subjected to battery by public actors of a two-year period from the date they discover their injuries to commence their actions. ORS 12.117 does not render the discovery rule inapplicable to plaintiffs' claims.

For the reasons stated, we conclude that the trial court erred in granting

---

[14]    ORS 12.117(1) provides:

"Notwithstanding ORS 12.110, 12.115 or 12.160, an action based on conduct that constitutes child abuse or conduct knowingly allowing, permitting or encouraging child abuse that occurs while the person is under 18 years of age must be commenced before the person attains 40 years of age, or if the person has not discovered the causal connection between the injury and the child abuse, nor in the exercise of reasonable care should have discovered the causal connection between the injury and the child abuse, not more than five years from the date the person discovers or in the exercise of reasonable care should have discovered the causal connection between the child abuse and the injury, whichever period is longer."

17

defendant's ORCP 21 motion to dismiss plaintiffs' claims for "Sexual Abuse of a Child" -- claims that we have analyzed as claims for battery -- on timeliness grounds.[15] The trial court and the Court of Appeals did not draw a distinction between plaintiffs' battery claims and their claims for intentional infliction of emotional distress and negligence. We also will follow that approach at this stage of the proceedings and, therefore, conclude that the trial court erred in dismissing plaintiffs' claims for intentional infliction of emotional distress and plaintiff Jack Doe 6's claim that defendant was negligent in failing to supervise or terminate Johnson, and in entering a limited judgment for defendant.[16]

The decision of the Court of Appeals is reversed. The limited judgment of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings.

---

[15]    In this court, plaintiffs argue that their claims for "Sexual Abuse of a Child" also may be viewed as negligence claims alleging a breach of fiduciary duty. Because we reach the conclusion that the trial court erred in dismissing those claims, we need not address that argument.

[16]    Because our holding may or may not affect the trial court's ruling as to the merits of plaintiffs' claim for declaratory judgment, we concluded that that is a matter that the trial court should consider on remand.

18