Argued and submitted September 25, 2012, reversed and remanded
April 17, 2013

Rabecca WHALEN,
*Plaintiff-Appellant,*

*v.*

AMERICAN MEDICAL RESPONSE NORTHWEST, INC.,
an Oregon corporation;
American Medical Response, Inc.,
*Defendants-Respondents,*

*and*

Lannie HASZARD,
*Defendant.*

Multnomah County Circuit Court
091116290; A147511

300 P3d 247

Gregory Kafoury argued the cause for appellant. With him on the briefs were Mark McDougal and Kafoury & McDougal.

Michael J. Estok argued the cause for respondents. With him on the brief were James L. Dumas and Lindsay, Hart, Neil & Weigler, LLP.

Before Ortega, Presiding Judge, and Sercombe, Judge, and Hadlock, Judge.

HADLOCK, J.

## HADLOCK, J.

Plaintiff brought this action for battery against a medical response business and its parent company, as well as a paramedic employed by the business, asserting that the paramedic had committed a battery upon her by touching her sexually during an ambulance transport. Defendants moved for summary judgment, and the trial court granted their motion on two independent grounds: (1) that plaintiff's claim was barred by the applicable statute of limitations; and (2) that plaintiff had failed to raise a genuine issue of material fact as to occurrence of the battery, which she could not remember. Plaintiff appeals, and we reverse and remand.

Summary judgment is appropriate if there is no genuine issue of material fact for trial and the moving party is entitled to judgment as a matter of law. ORCP 47 C. There is no genuine issue of material fact if, based upon the record, "no objectively reasonable juror could return a verdict for the adverse party on the matter that is the subject of the motion for summary judgment." *Id.* In determining whether a genuine factual dispute exists, we review the record in the light most favorable to the nonmoving party—here, plaintiff—and draw all reasonable inferences in her favor. *Jones v. General Motors Corp.*, 325 Or 404, 420, 939 P2d 608 (1997). We state the following facts consistently with that standard.

On January 25, 2006, American Medical Response Northwest (AMR) transported plaintiff by ambulance to a hospital following her complaint of shortness of breath. During plaintiff's transport, the ambulance staff consisted of a driver and a paramedic, Lannie Haszard, who accompanied plaintiff in the back of the ambulance. Plaintiff has no recollection of that trip. After the ambulance arrived at the hospital, an attendant undressed plaintiff while Haszard stood by and stared, panting and becoming aroused.

When plaintiff left the hospital, she "had a great sense of being unclean," and she "showered for a long time." About one month later, plaintiff returned a customer survey form to AMR indicating that she had received competent

medical care, but stating that Haszard's behavior in her hospital room had been "highly degrading and uncomfortable." Subsequently, plaintiff developed symptoms of hypervigilance and suffered disturbing nightmares that often involved images of Haszard hovering over her, and she had difficulty coping with daily responsibilities. Plaintiff believed that she had developed those symptoms, at least in part, because of Haszard's behavior in her hospital room.

In December 2007, plaintiff learned that Haszard had been charged with sexually assaulting women during other ambulance transports. The following year, Haszard pleaded guilty to five counts of attempting to commit sexual abuse, and additional women came forward with allegations that Haszard had been sexually inappropriate toward them during ambulance rides. In November 2009, plaintiff filed suit against Haszard,[1] AMR, and AMR's parent company, alleging that Haszard had committed a battery upon her by touching her sexually during the ambulance transport.[2] Plaintiff also alleged that she had discovered the occurrence of the sexual touching at "some time after [Haszard's] predatory history was [publicly] revealed in December of 2007."

Defendants moved for summary judgment on two grounds: first, that plaintiff had failed to raise a genuine issue of material fact because she had no memory of the alleged battery, and, second, that plaintiff was barred by a two-year statute of limitations from bringing a cause of action for an incident that had occurred almost four years earlier. ORS 12.110(1). In response, plaintiff submitted an affidavit from her attorney pursuant to ORCP 47 E stating that an expert had been retained whose testimony would create issues of fact. More specifically, the affidavit stated that the expert was prepared to testify that plaintiff had been

"subjected to a traumatic event during her AMR ambulance ride on January 25, 2006, that the event involved sexual touching by Lannie Haszard, and that the lack of memory

---

[1] Plaintiff later voluntarily dismissed Haszard from this case.

[2] Specifically, plaintiff alleged in her complaint that "Lannie Haszard touched and violated [her] in and around her sexual areas, deliberately and without lawful justification."

of the event exhibited by [plaintiff was] the result of the aforementioned amnesia caused by the trauma of the event."

Plaintiff asserted that the ORCP 47 E affidavit alone was sufficient to create an issue of material fact. In addition, plaintiff argued that the applicable two-year statute of limitations had been tolled by application of the "discovery rule,"[3] with the result that the statute had begun to run only when she discovered her injury in December 2007.

The trial court accepted both of defendants' arguments. Regarding evidence of battery, the court held that plaintiff had failed to raise a genuine issue of material fact because "Plaintiff cannot establish a claim based solely on the [ORCP] 47 E affidavit when Plaintiff acknowledges she has no memory of a battery." The trial court also agreed with defendant that plaintiff's claim was time barred, observing that battery claims are governed by a two-year statute of limitations, ORS 12.110(1), and concluding that the discovery rule does not apply to those claims.

On appeal, plaintiff challenges both aspects of the trial court's ruling in defendants' favor. First, she contends that the trial court erred in ruling that her battery claim was time barred. According to plaintiff, the discovery rule applies to actions for battery and, therefore, the statutory two-year limitations period did not begin to run on her claim until she discovered her injury in December 2007, making her November 2009 complaint timely. Second, plaintiff argues that the trial court erred in ruling that she had not submitted evidence creating a genuine issue of material fact regarding the occurrence of a battery. In that regard, plaintiff contends that the ORCP 47 E affidavit, either alone or in combination with the other evidence she presented, was sufficient to create a genuine issue of material fact. Plaintiff also suggests that the evidence other than the ORCP 47 E affidavit, standing alone, was sufficient to defeat defendants'

---

[3] We explain the "discovery rule" in more detail later in this opinion. In short, that rule embodies the principle that certain statutes of limitations do not begin to run until the plaintiff discovers, or reasonably should have discovered, "both the injury and the role that the defendant has played in that injury." *T. R. v. Boy Scouts of America*, 344 Or 282, 291-92, 181 P3d 758 (2008).

summary judgment motion. In response, defendants renew their argument that plaintiff's claim is barred by the applicable statute of limitations and also contend that plaintiff's ORCP 47 E affidavit did not create any genuine issue of material fact. We agree with plaintiff on both points.

We first address whether defendants were entitled to summary judgment on the ground that plaintiff's battery claim was untimely. The two-year statute of limitations found in ORS 12.110(1) describes the time within which a battery claim must be filed:

> "An action for assault, *battery*, false imprisonment, or for any injury to the person or rights of another, not arising on contract, and not especially enumerated in this chapter, *shall be commenced within two years*; provided, that in an action at law based upon fraud or deceit, the limitation shall be deemed to commence only from the discovery of the fraud or deceit."

(Emphases added.) Pursuant to ORS 12.010, the statutory period begins to run only after the cause of action has "accrued."[4]

The meaning of the word "accrued" in ORS 12.010 has been the subject of much analysis in Oregon cases. The seminal case remains *Berry v. Branner*, 245 Or 307, 308, 421 P2d 996 (1966), a medical malpractice case in which the plaintiff alleged that the defendant surgeon negligently had left a needle in her abdomen following a hysterectomy. The plaintiff alleged that, although she started to experience great pain two months after her surgery, she did not discover the presence of a needle (or that the needle was the cause of her pain) until several years later. The defendant demurred on the ground that the plaintiff had filed her malpractice claim more than two years after the surgery and it was, therefore, untimely under ORS 12.110(1), which then governed claims for medical malpractice.[5] The trial court sustained

---

[4] "Actions shall only be commenced within the periods prescribed in [ORS chapter 12], after the cause of action shall have accrued, except where a different limitation is prescribed by statute." ORS 12.010.

[5] Medical malpractice claims then were classified as claims "for any injury to the person *** not arising on contract" to which a two-year limitations period applied. ORS 12.110(1) (1957); *see Berry*, 245 Or at 309 (quoting statute). In 1967, the legislature explicitly incorporated the discovery rule into a separate statute of

the demurrer, but the Supreme Court reversed, focusing on what it deemed to be "the ordinary meaning of 'accrued' as it is used in relation to a cause of action":

> *"When used with reference to a cause of action it means when an action may be maintained thereon.* It accrues whenever one person may sue another. The cause of action must necessarily accrue to some person or legal entity. To say that a cause of action accrues to a person when she may maintain an action thereon and, at the same time, that it accrues before she has or can reasonably be expected to have knowledge of any wrong inflicted upon her is patently inconsistent and unrealistic. She cannot maintain an action before she knows she has one."

*Id.* at 312 (ciations omitted; emphasis in original).

Because the *Berry* plaintiff, "by the very nature of the treatment had no way of immediately ascertaining [her] injury," the court explained, the same definitive two-year limitations period "that is allowed for bringing other tort actions that are normally immediately ascertainable upon commission of the wrong" should not apply. *Id.* Rather, the court concluded, "the cause of action accrued at the time plaintiff obtained knowledge, or reasonably should have obtained knowledge of the tort committed upon her person by defendant." *Id.* at 315-16.

That ultimate holding in *Berry* has come to be known as the "discovery rule," that is, the principle that statutes of limitations—at least for certain causes of action—do "not begin to run until a reasonably prudent plaintiff perceives both the injury and the role that the defendant has played in that injury." *T. R. v. Boy Scouts of America*, 344 Or 282, 291-92, 181 P3d 758 (2008) (discussing *Berry*).[6] The Supreme

---

limitations for medical malpractice claims. Or Laws 1967, ch 406, § 1. That rule is now codified at ORS 12.110(4).

[6] The expectation that a plaintiff reasonably should discover the existence of an injury at a certain time serves to impose a duty of inquiry. *See T. R.*, 344 Or at 293 (a plaintiff "is required to conduct an investigation that a reasonable person in his or her circumstances would conduct"). However, knowledge of facts that trigger a duty to inquire might not cause the statute of limitations to run immediately. Rather, the period of limitations typically commences "at some later point when, after inquiry, the facts reasonably should disclose the existence of an actionable injury." *Greene v. Legacy Emanuel Hospital*, 335 Or 115, 123, 60 P3d 535 (2002). We do not address how the duty to inquire might apply in this case, as defendants did

Court consistently has applied that rule to other causes of action involving claimed bodily injury to which the ORS 12.110 two-year limitations period applies, and so have we. *See, e.g., id.* at 288, 291 (section 1983 claim for sexual abuse that the parties agreed was governed by ORS 12.110(1)); *Schiele v. Hobart Corporation*, 284 Or 483, 487, 489-90, 587 P2d 1010 (1978) (negligent infliction of occupational disease); *Cole v. Sunnyside Marketplace, LLC*, 212 Or App 509, 160 P3d 1 (2007), *rev den*, 344 Or 558 (2008) (personal injury action based on an abduction and rape); *cf. Doe v. Lake Oswego School District*, 353 Or 321, 331-32, 297 P3d 1287 (2013) (applying discovery rule to sexual battery claim brought under the Oregon Tort Claims Act (OTCA)).[7]

Plaintiff's claim for battery is a claim related to personal injury in the sense of bodily harm. Accordingly, *Berry* and the other cases cited above suggest that the discovery rule should apply to her claim. Nonetheless, defendants argue that the discovery rule does not apply here for two reasons: (1) the text of ORS 12.110(1) does not create a discovery rule for battery claims and (2) the discovery rule articulated in *Berry* and its progeny is inapplicable to battery claims because those claims are "inherently discoverable." We address those two assertions in turn.

According to defendants, the "plain text" of ORS 12.110(1) forecloses a discovery rule for battery claims. That is so, they argue, because the second clause in the statute, which applies to actions for fraud and deceit, introduces a discovery rule, but the first clause, which applies to an action for battery, does not, and that omission was deliberate:

> "An action for assault, battery, false imprisonment, or for any injury to the person or rights of another, not arising on contract, and not especially enumerated in this chapter, shall be commenced within two years; *provided, that in*

not move for summary judgment on the basis that plaintiff had failed to inquire about the occurrence of an injury.

[7] We recognize that *Doe* might be read to stand for the broad principle that the discovery rule always applies to battery claims, whether brought against public entities or private defendants. The opinion does not expressly state that rule, however, and instead cites another OTCA case for the principle that the discovery rule applied to the claim in *Doe*, in which the defendant was a public school district. *Doe*, 353 Or at 328. Because this case does not involve the OTCA, we resist the temptation to rely exclusively on *Doe*.

*an action at law based upon fraud or deceit, the limitation
shall be deemed to commence only from the discovery of the
fraud or deceit."*

ORS 12.110(1) (emphasis added). However, defendants' plain-text argument is precluded by the Supreme Court's analysis and holding in *Berry*. There, the court rejected the argument that the legislature had deliberately adopted the discovery rule in ORS 12.110(1) as to actions for fraud and deceit, but not with respect to personal injury claims. *Berry*, 245 Or at 310; *see Cole*, 212 Or App at 515 (explaining that, in *Berry*, "the Court concluded that ORS 12.110(1) *does* include a discovery provision that applies to actions other than those based on fraud or deceit" (emphasis in original)). Moreover, defendants do not propose, and we do not perceive, any textual reason why the discovery rule should apply to one cause of action in the first clause of ORS 12.110(1) but not to another.

Nor are we persuaded by defendants' argument that the discovery rule does not apply to battery claims because those claims are "inherently discoverable." That argument finds its genesis in *Berry*, where the Supreme Court noted that some malpractice claims are brought by plaintiffs who "by the very nature of the treatment had no way of immediately ascertaining their injury[.]" 245 Or at 312. On that basis, the court distinguished malpractice claims—to which it applied a discovery rule—from "other tort actions that are normally immediately ascertainable upon commission of the wrong," where there is no need to toll the statutory limitations period. Over time, that reasoning has been applied to cases where "the relevant facts are so obvious to a reasonable person that they are said to be 'inherently discoverable.'" *Cole*, 212 Or App at 519. However, although we sometimes have said that the discovery rule does not apply in those circumstances, that "phrasing is perhaps imprecise; in such cases, the discovery rule 'applies,' but its application does not toll the statute of limitations because the information should reasonably have been discovered earlier." *Id*. Thus, the question of whether an injury is "inherently discoverable" is simply another way of asking whether the injury reasonably should have been discovered earlier than it was. We conclude, based on

*Cole* and the other cases that we have discussed, that the "discovery rule" applies in all circumstances involving tort claims based on bodily harm; when the injury is "inherently discoverable," however, the discovery rule's application does not extend the time within which the plaintiff may bring a claim.[8]

Focusing on our previous discussions of the types of injuries that may be deemed "inherently discoverable," defendants contend, essentially, that battery is a tort that is "inherently discoverable" as a matter of law: "it must be the case that a 'reasonably prudent plaintiff' knows when he or she is being battered." That argument cannot be reconciled with the recent decision in *Doe*, in which the Supreme Court considered whether the "plaintiffs' allegations that [a teacher] fondled their genitals in and before 1984 require[d] the conclusion that their battery claims accrued by that date." 353 Or at 329. The *Doe* court rejected the defendants' argument that the battery claim necessarily accrued when the battery occurred. *Id*. at 332. Instead, the court concluded, application of the discovery rule meant that the battery claim did not accrue—and the limitations period did not begin to run—until the plaintiffs not only discovered that the touching had occurred, but also recognized (or would be deemed to have recognized) that the touching "was in fact offensive." * * * *Id*. at 331. That holding establishes that at least some batteries are not "inherently discoverable" at the moment of occurrence, defeating defendants' assertion, here, that a discovery rule never applies to battery claims because those claims always are inherently discoverable.

---

[8] The cases in which we have held flatly that no discovery rule applies either have not involved tort claims subject to the ORS 12.110(1) two-year limitations period—*e.g.*, *Waxman v. Waxman & Associates, Inc.*, 224 Or App 499, 511-12, 198 P3d 445 (2008) (breach of contract claim)—or have related to torts that did not involve claims of bodily harm, *i.e.*, *Rice v. Rabb*, 251 Or App 603, 608-09, 284 P3d 1178 (2012), *rev allowed*, 353 Or 280 (2013) (conversion; also noting that "a conversion claim accrues at the time the defendant exercises wrongful dominion or control over property in a manner that seriously interferes with the owner's rights[,]" even if the plaintiff is unaware of the wrongful conduct, absent fraudulent concealment); *Workman v. Rajneesh Foundation International*, 84 Or App 226, 230-31, 733 P2d 908, *rev den*, 303 Or 700 (1987) (defamation). Those holdings do not apply here because this case involves a claim for bodily injury and, as explained earlier in this opinion, *Berry* and its progeny hold that the discovery rule does apply to such claims.

The question remains whether application of the discovery rule will result in the statutory limitations period being tolled in this case. In response to defendants' summary judgment motion, plaintiff offered evidence that she reasonably did not immediately discover that she had been sexually battered in the ambulance because she suffers from traumatic amnesia caused by that battery. Whether plaintiff does in fact suffer from traumatic amnesia is a question of fact for a jury, as is the question whether, notwithstanding any such amnesia, plaintiff reasonably should have discovered the alleged battery more than two years before she initiated this litigation. Because there is a genuine issue of fact regarding those questions, the trial court erred in granting defendants' motion for summary judgment on the ground that plaintiff's claim was time barred.

We turn to the second basis on which the trial court granted summary judgment to defendants, *i.e.*, that plaintiff "cannot establish a claim based solely on the [ORCP] 47 E affidavit when [plaintiff] acknowledges she has no memory of a battery." As noted, plaintiff argues on appeal that the ORCP 47 E affidavit that her attorney submitted was enough to overcome defendants' summary judgment motion. That affidavit by counsel stated, in material part:

"A qualified expert has been retained who is available and willing to testify to admissible facts or opinions creating questions of fact, which, if revealed by affidavit, would be a sufficient basis for denying summary judgment, as to all issues of fact raised by the defendants.

"Without in any way limiting the effect of the above language, plaintiff wishes to advise the Court that the expert is prepared to testify that to the appropriate standard of reasonable probability within the standards of the relevant profession that [plaintiff] was subjected to a traumatic event during her AMR ambulance ride on January 25, 2006, that the event involved sexual touching by Lannie Haszard, and that the lack of memory of the event exhibited by [plaintiff] is the result of the aforementioned amnesia caused by the trauma of the event."

Plaintiff contends that the affidavit was enough, standing alone, to create a genuine issue of material fact about the

occurrence of a battery. In addition, plaintiff points to other evidence in the record, including evidence of Haszard's assaults of other women, of Haszard's behavior toward her at the hospital, of her amnesia, and of the post-hospitalization symptoms she suffered, including obsessively washing herself and experiencing nightmares about Haszard. Plaintiff characterizes that evidence as "circumstantial evidence of her abuse by Mr. Haszard" and contends that, alone or in combination with the ORCP 47 E affidavit, it created a genuine issue of material fact sufficient to go to a jury.

Defendants raise several points in response. First, defendants disparage plaintiff's current allegations of battery, asserting that they conflict with her earlier failure to report any sexual touching or amnesia. Defendants do not, however, explain why that alleged conflict should lead us to conclude that the record includes no competent evidence supporting plaintiff's battery claim. We conclude, to the contrary, that the record poses a quintessential jury question if it includes evidence both that plaintiff was battered by Haszard and that she has no recollection of the event. It is for the jury to resolve any tension that some factfinders might perceive in that evidence. We also reject any suggestion that a plaintiff's inability to recall having been injured is a *per se* bar to prevailing on an associated tort claim. Some tort victims may not recall having been injured—because, for example, they were unconscious or suffered cognitive limitations at the time—but that does not mean that the tortious injury cannot be proved through evidence other than the plaintiffs' testimony.

Second, defendants contend that plaintiff's ORCP 47 E affidavit does not create a genuine factual issue because such an affidavit "permits the trial court to find an issue of fact on an element of a claim only where expert testimony is 'required' to prove it." Defendants argue that expert testimony is not "required" to prove the existence of a battery, because whether a battery occurred "is a purely factual and historical question involving lay testimony" and "involves no complex or scientific considerations that are beyond a lay juror's competence."

Defendants are correct that, as a general matter, the filing of an ORCP 47 E affidavit "precludes summary judgment only where expert opinion evidence is *required* to establish a genuine issue of material fact." *DeBerry v. Summers*, 255 Or App 152, 163, 296 P3d 610 (2013) (emphasis in original). And it may well be true that expert testimony is not "required" in most cases involving battery claims. In this case, however, expert opinion is required, because the very circumstances that plaintiff alleges—that she suffers amnesia as a result of being battered by Haszard—hinder plaintiff's ability to prove her claim through more direct evidence, like her own testimony, that a juror would not need assistance in understanding. *See Vandermay v. Clayton*, 328 Or 646, 655, 984 P2d 272 (1999) ("[E]xpert testimony is required if the issues are not within the knowledge of the ordinary lay juror.").

Third, defendants argue that the expert affidavit is inadmissible in this case under *State v. Southard*, 347 Or 127, 218 P3d 104 (2009), and subsequent cases. According to defendants, *Southard* holds that "an expert's opinion or diagnosis that 'sexual abuse occurred' is *always* inadmissible in the absence of any physical evidence corroborating that abuse." (Emphasis in original.) Indeed, *Southard* does hold that an expert opinion that a child was sexually abused is "inadmissible in the absence of physical evidence of abuse, because it does not tell the jury anything that the jury could not have determined on its own, and, therefore, the probative value of any such testimony is outweighed by the danger of unfair prejudicial effect under OEC 403." *State v. Lupoli*, 348 Or 346, 357, 234 P3d 117 (2010) (characterizing *Southard*). Nonetheless, we disagree with defendants' contention that plaintiff's ORCP 47 E affidavit is inadmissible under *Southard*. The holding in that case was premised largely on concerns that do not apply here: that the proffered expert opinion was based primarily on an assessment of the child victim's credibility, 347 Or at 140-41, and that the record included no "physical evidence of abuse[,]" *id*. at 142. Under those circumstances, the Supreme Court held, the risk of prejudice to the criminal defendant substantially outweighed the "minimal probative value of the diagnosis." *Id*. at 141.

Here, contrary to defendants' contentions, the ORCP 47 E affidavit does not raise the concerns underpinning the Supreme Court's decision in *Southard*. Simply stated, on this record, we cannot say that the expert's opinion is based primarily on an assessment of plaintiff's credibility or that it is not based on some physical evidence of the battery. For that reason, we reject defendant's argument that the ORCP 47 E affidavit is not admissible in response to defendants' summary judgment motion, and therefore, could not create a genuine issue of material fact.[9]

Fourth, defendants appear to suggest that the expert affidavit is either inadmissible or insufficient to create a genuine issue of fact because it does not explain the basis on which the expert concluded that plaintiff suffers from traumatic amnesia caused by a battery in the ambulance. But defendants cite no authority to support their contention that an ORCP 47 E affidavit must include that level of detail, and we are not aware of any. To the contrary, under ORCP 47 E, an attorney's affidavit creates a genuine factual dispute if it states "that an unnamed qualified expert has been retained who is available and willing to testify to admissible facts or opinions creating a question of fact" if the expert "has actually rendered an opinion or provided facts which, *if revealed by affidavit or declaration,* would be a sufficient basis for denying the motion for summary judgment." ORCP 47 E (emphasis added). The emphasized part of the rule makes clear that the actual opinion or facts to which the expert *eventually* will testify need not be revealed at the time of summary judgment proceedings. *See generally Piskorski v. Ron Tonkin Toyota, Inc.*, 179 Or App 713, 718, 41 P3d 1088 (2002) ("If a party 'is required to provide the opinion of an expert to establish a genuine issue of material fact,' an attorney's affidavit asserting that a retained expert will provide admissible evidence is sufficient, without more, to create a factual dispute on that issue.").

Finally, and in conjunction with their complaint about the lack of explanation in the affidavit by plaintiff's

---

[9] Our holding is confined to whether the ORCP 47 E affidavit was admissible for purposes of plaintiff's opposition to the summary judgment motion. Once the details of, and bases for, the expert opinion are revealed, it may be that defendants will have grounds to argue against the admissibility of that opinion at trial.

counsel, defendants offer citations to cases discussing other courts' conclusions regarding the usefulness of expert testimony like that described in the affidavit. But those courts' opinions do not establish, as a matter of Oregon law, that plaintiff's expert cannot offer an admissible opinion that plaintiff has traumatic amnesia that was caused by a sexual assault she suffered in the back of defendants' ambulance. At most, those cases suggest that defendants may be able to offer contrary evidence at a motion *in limine* or at trial—perhaps evidence that undermines the sufficiency of the findings on which plaintiff's expert based his or her opinion, the validity of the science underlying that conclusion, or the ultimate persuasiveness of the opinion. But the possible existence of such contrary evidence does not establish that the ORCP 47 E affidavit is insufficient to defeat defendants' summary judgment motion.

In short, we are not persuaded by defendants' arguments that plaintiff's ORCP 47 E affidavit is inadmissible or, if admissible, insufficient to create a genuine issue of material fact. Particularly in combination with evidence about Haszard's sexually offensive behavior following the ambulance ride, and evidence that plaintiff does not recall the transport but subsequently has experienced nightmares about Haszard and obsessive feelings of uncleanliness, the affidavit creates a genuine dispute of fact regarding whether Haszard battered plaintiff in the ambulance.[10]

In the end, defendants express frustration at their inability "to discover or learn *any facts* relating to how Plaintiff was allegedly touched by Mr. Haszard until Plaintiff's expert takes the stand in trial." (Emphasis in original.) That frustration may be understandable, but it is the result of ORCP 47 E's clear mandate that parties litigating summary judgment motions need provide only very limited information about the expert opinions on which they intend to rely at trial. The rule itself explains that it is not to be used "to obtain the names of potential expert witnesses *or to*

---

[10] Because we conclude that the evidence described above is sufficient to create an issue of fact for a jury, we do not address defendants' contention that additional evidence that plaintiff offered, concerning Haszard's assaults of other women, is "other bad acts" evidence that is inadmissible under OEC 404(3). The evidence regarding Haszard's behavior toward other women plays no part in our analysis.

*obtain their facts or opinions.*" ORCP 47 E (emphasis added). Rather, under the rule, plaintiff could defeat defendants' summary judgment motion by submitting an attorney's affidavit stating that an unnamed expert had been retained who was willing to testify to facts or opinions that, *if revealed*, would create a genuine factual dispute. The affidavit in this case meets that standard, and the trial court erred when it granted summary judgment to defendants.

Reversed and remanded.