Argued and submitted January 28, 2014, judgment in favor of the State of
Oregon and City of Depoe Bay reversed and remanded, otherwise affirmed
April 15, petition for review allowed July 30, 2015 (357 Or 595)

Tyler TURNER,
*Plaintiff-Appellant,*

*v.*

STATE OF OREGON,
through its Department of Transportation;
City of Depoe Bay;
and Lincoln County,
*Defendants-Respondents,*

*and*

Carol COLIP,
*Defendant-Appellant.*

CITY OF DEPOE BAY, et al.,
*Cross-Plaintiffs,*

*v.*

Carol COLIP, et al.,
*Cross-Defendants.*

Marion County Circuit Court
10C17842; A151193

348 P3d 253

Judgment in favor of the State of Oregon and City of Depoe Bay reversed and remanded; otherwise affirmed.

W. Eugene Hallman argued the cause for appellant Tyler Turner. With him on the briefs were Hallman Law Office, Wm. Keith Dozier, and Paulson & Coletti.

Thomas M. Christ argued the cause for appellant Carol Colip. With him on the briefs were Julie A. Smith and Cosgrave Vergeer Kester LLP.

Cecil A. Reniche-Smith, Senior Assistant Attorney General, argued the cause for respondent State of Oregon. With her on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Janet M. Schroer argued the cause for respondents City of Depoe Bay and Lincoln County. With her on the brief were Marjorie Speirs and Hart Wagner LLP.

Before Sercombe, Presiding Judge, and Hadlock, Judge, and Tookey, Judge.

SERCOMBE, P. J.

## SERCOMBE, P. J.

As plaintiff was travelling north on State Highway 101 in the City of Depoe Bay, his motorcycle collided with defendant Colip's automobile, which had entered the highway from the east on a road owned by Lincoln County. Plaintiff was severely injured in the accident and, more than two years later, brought a personal injury action against Colip, as well as the state, the county, and the city (the governmental entities), seeking damages for his injuries. Plaintiff alleged that Colip operated her vehicle negligently and that the governmental entities negligently designed and maintained the intersection and both roadways. Colip brought cross-claims for contribution against the governmental entities.

The governmental entities moved for summary judgment against plaintiff and Colip. The trial court entered a limited judgment in their favor, concluding that plaintiff's claims against the governmental entities were time-barred under ORS 30.275(9), the applicable statute of limitations in the Oregon Tort Claims Act (OTCA), ORS 30.260 to 30.300, and that the governmental entities were immune from liability under ORS 30.265(6)(c). We conclude that the trial court did not err in entering judgment in favor of the county on the grounds of discretionary immunity under ORS 30.265(6)(c). However, issues of fact on the accrual of the period of limitations and the existence or extent of any discretionary immunity preclude entry of summary judgment in favor of the state and the city. Accordingly, we affirm the limited judgment in part, and reverse in part.

Our standard of review is well known: Summary judgment is appropriate if there is no genuine issue of material fact for trial, and the moving party is entitled to judgment as a matter of law. ORCP 47 C; *Brehm v. Caterpillar, Inc.*, 235 Or App 274, 278, 231 P3d 797, *rev den*, 349 Or 245 (2010). When reviewing a grant of summary judgment, we view the facts in the light most favorable to the nonmoving parties—in this case, plaintiff and Colip. *Jones v. General Motors Corp.*, 325 Or 404, 408, 939 P2d 608 (1997). We set out the facts consistent with that standard of review.

## BACKGROUND

The accident occurred on June 27, 2008; plaintiff was hospitalized and heavily medicated for several weeks. On July 9, 2008, plaintiff's parents met with an attorney on his behalf, and plaintiff signed a retainer on July 23. That attorney investigated the accident and sent a tort claim notice on July 31, 2008, to each of the governmental entities.[1] The notice provided that "[t]he facts giving rise to [plaintiff's] claim are that on June 27, 2008, he was injured in an automobile/motorcycle collision. The incident took place on Highway 101 and Collins Street in Depoe Bay, Oregon. This incident was caused by the dangerous condition and design of this intersection."

Plaintiff filed an amended complaint against all defendants on July 6, 2010.[2] Plaintiff alleged that he "did not know, nor could he reasonably have known of the negligence of defendants more than two years before the filing of his Complaint." He claimed that the state was negligent in (1) failing to maintain sight distances for the highway intersection and to "adopt mitigation measures" required by administrative regulations, specifically to restrict left-turn movements from Collins Street to Highway 101 and to post warning signs, (2) permitting diagonal parking on the highway with a speed limit of more than 25 miles per hour, contrary to administrative regulations, and (3) "permitting and maintaining" an unreasonably dangerous "intersection onto a state highway" due to "impaired sight distances" and "a failure to post adequate warning signs of a dangerous intersection or impaired sight distances." The amended complaint further alleged that the county and city were negligent in (1) "permitting and maintaining an intersection with impaired sight distances," (2) failing to restrict Collins Street to prohibit a left turn onto Highway 101 or only "to one way

---

[1] The OTCA requires that a personal injury claimant provide a notice of claim to a public body within 180 days after the alleged loss or injury in order to maintain an action against that public body. ORS 30.275(2)(b). Among other things, the notice must include a "description of the time, place and circumstances giving rise to the claim, so far as known to the claimant." ORS 30.275(4)(b).

[2] Plaintiff had earlier composed a complaint against only the governmental entities. That complaint was filed with the court on July 6, 2010, and was not served on the parties. The amended complaint that was filed and served is the operative pleading that commenced the action.

traffic flowing away from Highway 101," (3) "permitting and installing" diagonal parking on Highway 101 that impaired the views at the intersection, and (4) failing to post signs on both streets "warning of the dangerous intersection."

Plaintiff asserted that Colip was negligent in failing to obey a traffic control device, yield the right of way to plaintiff, and keep a reasonable lookout for oncoming traffic. Colip answered the amended complaint and asserted cross-claims for contribution against the governmental defendants. Those cross-claims reiterated the negligence claims in the amended complaint and added allegations that the governmental entities were negligent in "failing to close the intersection" and "failing to increase visibility for drivers approaching and entering the intersection." Because those acts of negligence "made the intersection dangerous for the traveling public," Colip contended that the governmental entities "should contribute to any amount awarded to Plaintiff."

The governmental entities sought summary judgment, asserting that plaintiff's claims were not viable for two reasons. They first argued that plaintiff's amended complaint was untimely under ORS 30.275(9), pursuant to which "an action arising from any act or omission of a public body or an officer, employee or agent of a public body within the scope of [the OTCA] shall be commenced within two years after the alleged loss or injury." Those entities contended that plaintiff knew or should have known of any tortious conduct on their part more than two years prior to the filing of the amended complaint.

Alternatively, the governmental entities advocated that they were immune from liability for the negligence asserted in the amended complaint. The entities argued that their decisions regarding the design and construction of the intersection, parking, traffic controls, and signage, and failure to modify those features were discretionary decisions that were immune from liability under ORS 30.265(6)(c). That statute provides, in part, that "[e]very public body and its officers, employees and agents acting within the scope of their employment or duties *** are immune from liability for *** [a]ny claim based upon the performance of or

the failure to exercise or perform a discretionary function or duty, whether or not the discretion is abused."

The court granted the governmental entities' motions for summary judgment against plaintiff on the ground that the claims were barred under the statute of limitations in ORS 30.275(9). Later, when those defendants sought summary judgment against Colip on the contribution cross-claims, the court granted summary judgment in their favor. The court concluded that the governmental entities were immune from liability to plaintiff, and thereby not liable to contribute to Colip for a share of any recovery obtained against her, because of the discretionary immunity provided under ORS 30.265(6)(c). Plaintiff and Colip appeal from the limited judgment entered against them and in favor of the governmental entities.

## ACCRUAL OF THE PERIOD OF LIMITATIONS

We begin by evaluating whether plaintiff's action was "commenced within two years after the alleged loss or injury" under ORS 30.275(9). The relevant legal principles are well established. First, the OTCA statute of limitations is tolled under the discovery rule until "a plaintiff has a reasonable opportunity to *discover his injury* and the identity of the party responsible for that injury." *Doe v. Lake Oswego School District*, 353 Or 321, 327, 297 P3d 1287 (2013) (internal quotation marks omitted; emphasis in original). More specifically, the term "injury" in the statute means that which "'formed the basis for an action, *i.e.*, legally cognizable harm'" and a "'harm is legally cognizable if it is the result of tortious conduct.'" *Id.* at 328 (quoting *Gaston v. Parsons*, 318 Or 247, 254-55, 864 P2d 1319 (1994)). Thus, a reasonable plaintiff must discover "not only the conduct of the defendant, but also * * * the tortious nature of that conduct." *Id.* at 331. As noted, knowledge of tortious conduct includes knowledge of "the probable identity of the tortfeasor." *Johnson v. Mult. Co. Dept. Community of Justice*, 344 Or 111, 118 n 2, 178 P3d 210 (2008).

In sum, "an 'injury' is discovered when a plaintiff knows or should have known of the existence of three elements: (1) harm; (2) causation; and (3) tortious conduct." *Doe*, 353 Or at 328. The statute of limitations begins to run

under ORS 30.275(9) "'when the plaintiff knows or, in the exercise of reasonable care, should have known facts that would make a reasonable person aware of a substantial possibility that each of the elements of a claim exists.'" *Id.* at 333 (quoting *Kaseberg v. Davis Wright Tremaine, LLP,* 351 Or 270, 278, 265 P3d 777 (2011)). "In applying that standard, a court must consider the facts from the perspective of a reasonable person in the circumstances of the plaintiff." *Id.*

Application of the discovery rule gives a plaintiff a reasonable opportunity to become aware of his or her claim. *Gaston,* 318 Or at 255-56. The point in time when an investigation would have disclosed facts that made a reasonable person aware of a substantial possibility of injury marks the beginning of the limitations period—not the earlier point in time when plaintiff first had a duty to investigate. *The Foster Group, Inc. v. City of Elgin, Oregon,* 264 Or App 424, 432, 332 P3d 354 (2014). Generally speaking, the factual determination of when a reasonable person would have been aware of the substantial possibility of the elements of a claim is a jury question. "Application of the discovery accrual rule is a factual issue for the jury unless the only conclusion a reasonable jury could reach is that plaintiff knew or should have known the critical facts at a specified time and did not file suit within the requisite time thereafter." *T. R. v. Boy Scouts of America,* 344 Or 282, 296, 181 P3d 758 (2008).

Oregon courts have held that mere knowledge that governmental conduct caused harm is insufficient to commence the period of limitations; the plaintiff must also reasonably know the tortious nature of the governmental conduct—that the conduct was negligent or intentionally harmful. Thus, in *DeNucci v. Henningsen,* 248 Or App 59, 273 P3d 148 (2012), the plaintiff brought a false arrest claim against a county. The plaintiff was arrested at the scene of an accident and cited for interference with a firefighter or emergency medical services provider on May 14, 2005. The charges were later amended to include a charge of interfering with a peace officer. The charges were dismissed at the state's motion on September 29, 2005. Plaintiff provided a notice of tort claim to the county on March 24, 2006 (within 176 days after the charges were dismissed), and the county

moved to dismiss for failure to provide the notice "within 180 days after the alleged loss or injury" under ORS 30.275(2)(b). The county argued that the claim accrued when the plaintiff was arrested; the plaintiff, on the other hand, argued that the discovery rule applies to tort claim notices under the OTCA, and that she did not know of an injury to her legally protected interests—that the arrest was false—until the charges were dismissed.

We noted that the notice period and the two-year statute of limitations under the OTCA do not begin to run until a plaintiff knows or reasonably should know of the facts giving rise to a claim. 248 Or App at 69. We concluded that there was

> "no reason to conclude that a reasonable person would have known that her arrest was unlawful on the day when it took place. Under these circumstances, we cannot say, as a matter of law, that plaintiff had a duty to investigate the legality of her arrest immediately after she was arrested; nor can we say, if she had such a duty, when an investigation would have yielded facts that would have alerted a reasonable person to a substantial possibility that the arrest was unlawful. Therefore, the question of when plaintiff knew or should have known facts indicating that her arrest was unlawful must be answered by a jury."

*Id.* at 69-70; *see also Doe,* 353 Or at 331 (fact issues as to whether child "recognized or must be deemed to have recognized [the offensive nature of a sexual battery] when the touching occurred" precluded dismissal of OTCA claims for battery under ORS 30.275(9)); *Johnson,* 344 Or at 113, 120-23 (knowledge of improper supervision by state of the plaintiff's assailant could not be imputed from the time that the plaintiff knew the identity of her assailant or the time that news reports about that supervision were available); *Worman v. Columbia County,* 223 Or App 223, 230-31, 195 P3d 414 (2008) (the plaintiffs' report of loss to state identifying county as a possible party to herbicide spraying that injured their bushes did "not establish, as a matter of law, that the plaintiffs knew of a 'substantial possibility' that the county was responsible for the damage to their property, particularly considering the evidence in the summary judgment record that the county previously denied

spraying the plaintiffs' area and keeping any records of such spraying").

The governmental entities contend that, on the day of the accident, plaintiff was aware that there was a substantial possibility that the harm to him was caused by their tortious conduct. They infer that awareness from the physical arrangement of the roads and the obvious circumstances of the accident itself. The entities contend that we drew a similar inference in *Mann v. Dept. of Transportation*, 114 Or App 562, 836 P2d 1353 (1992), *rev'd on other grounds*, 315 Or 642, 847 P2d 856, *on remand*, 122 Or App 628, 856 P2d 1055 (1993), and that plaintiff's inferred knowledge compels the conclusion that their tortious conduct was discoverable, as a matter of law, at the time of the collision.

In *Mann*, the plaintiff's wife and child were traveling on an icy state highway when an oncoming vehicle crossed the center line and collided with their vehicle. 114 Or App at 564. The plaintiff's wife was killed and his child was injured in the accident. The plaintiff investigated the cause of the accident and was informed by state employees that the highway had been sanded. Nearly three years later, the plaintiff discovered that the highway had not been sanded. Shortly after the discovery, he filed wrongful death and negligence claims against the state on behalf of his child and his wife's estate, alleging that the highway was icy and unsafe and that the state had negligently failed to warn motorists of that unsafe condition, place traffic barriers between the lanes of travel, and adequately sand the highway. *Id*. The trial court granted the state's motion to dismiss for failing to commence an action within the OTCA's statute of limitations.

In considering the plaintiff's appeal, we concluded that, on the date of the accident, the "plaintiff had sufficient information to raise an issue of fact on each element of his wrongful death claim" and that his claim accrued on that date. 114 Or App at 565. Specifically, we noted:

"Regardless of defendant's misrepresentation, plaintiff was aware, on the date of the accident, that road conditions had been hazardous. He also knew, or should have known, that the state was responsible for maintaining the

highway in question. It was apparent that the state had not constructed a central barrier and had not provided signs to warn motorists of potentially dangerous driving conditions. Those facts provided a sufficient basis for an action against the state. Plaintiff knew that his wife had been killed, that her death *could* be attributed to defendant's acts and that defendant arguably had been negligent in at least two respects."

*Id.* (emphasis in original).

In *Mann*, we inferred the plaintiff's knowledge of a substantial possibility that the harm was caused by an identified person's tortious conduct based on the immediately apparent hazard of the road conditions as well as the known identity of the entity responsible for mitigating that hazard. Here, in contrast, the dangerousness of the road conditions was not obvious as a matter of law. The vision obstruction by parked vehicles on Highway 101 may or may not have been hazardous depending upon a number of factors, including how the allowed speed for vehicles traveling on the highway and the allowed turning movements from Collins Street affected the obstruction. Nor was it apparent which entity was responsible for those conditions. The summary judgment record is not clear regarding whether the city, the county, or the state, or all three governmental entities, were responsible for assessing or mitigating safety issues with the parking design or traffic controls and movement at the intersection.

Thus, plaintiff's knowledge of the collision and the resulting harm (even with any imputed knowledge of who owned the roads in question) does not establish conclusively that plaintiff knew or should have known at that time the tortious conduct of the governmental entities and that they were negligent in the design and construction of the intersection, the parking, traffic controls, and signage, and in any failure to later modify those features. Plaintiff would need to reasonably have known, at the very least, that the accident was caused by Colip's inability to detect northbound traffic on Highway 101 until she was in the travel lane for that traffic, and that there was a substantial possibility that that vision obstruction, in turn, was caused or not remedied by particular "tortious conduct," that is, unreasonable

actions and inactions of the governmental entities.[3] We cannot say, as a matter of law, that a reasonable plaintiff would have known of those facts no later than July 6, 2008—two years before the filing of the amended complaint, and nine days after the accident. Therefore, when a reasonable plaintiff would have discovered the relevant actions or inactions of the governmental entities is a question for the jury. The trial court erred in concluding otherwise and granting the governmental defendants' motion for summary judgment against plaintiff.

## DISCRETIONARY IMMUNITY

The facts and the law with respect to any discretionary immunity of the governmental entities are more complicated. To reiterate, ORS 30.265(6)(c) provides, in part:

> "Every public body *and its officers, employees and agents* acting within the scope of their employment or duties * * * are immune from liability for:
>
> "* * * * *
>
> "(c) Any claim *based upon the performance of or the failure to exercise or perform a discretionary function or duty,* whether or not the discretion is abused."

(Emphases added.)

We summarized the core principles applied in determining the existence of discretionary immunity in *Ramirez v. Hawaii T & S Enterprises, Inc.*, 179 Or App 416, 419, 39 P3d 931, *rev den*, 335 Or 114 (2002):

> "One of the more succinct formulations of the distinction between immune and nonimmune actions under the doctrine of discretionary immunity is this: Discretionary immunity applies to actions that embody 'a choice among alternative public policies by persons to whom responsibility for such policies have been delegated.' *Miller v. Grants Pass Irrigation District*, 297 Or 312, 316, 686 P2d 324 (1984). This statement identifies three criteria that a government function or duty must meet in order to qualify for discretionary immunity. It must be the result of a *choice,*

---

[3] Indeed, a reasonable person would ordinarily assume that a governmental entity acts reasonably in constructing and maintaining a public facility. *See* OEC 311(1)(j) (presumption that "[o]fficial duty has been regularly performed").

that is, the exercise of judgment; that choice must involve public *policy,* as opposed to the routine *day-to-day* activities of public officials; and the public policy choice must be exercised by a body or person that has, either directly or by delegation, the *responsibility* or authority to make it."

(Emphases in original.)

The statute does not protect a government's failure to take action when there is a duty to do so. As the court held in *Hughes v. Wilson,* 345 Or 491, 496, 199 P3d 305 (2008),

"if the law requires a government to exercise due care, then ORS 30.265 does not immunize its decision not to exercise care at all. When a public body owes a duty of care, that body has discretion in choosing the means by which it carries out that duty. *Little v. Wimmer,* 303 Or 580, 589, 739 P2d 564 (1987); *Miller v. Grants Pass Irr. Dist.,* 297 Or 312, 320, 686 P2d 324 (1984). But '[t]he range of permissible choices does not * * * include the choice of not exercising care.' *Mosley* [*v. Portland School Dist. No. 1J,* 315 Or 85, 92, 843 P2d 415 (1992)]."

*Hughes* also emphasized that a government's choice must be implemented for an immunity to attach: "Merely weighing costs and benefits and making a decision, even if that decision might qualify as a permissible discretionary decision, is not sufficient to entitle a government to immunity. The government must also demonstrate that it took the action necessary to effectuate that decision." 345 Or at 501.

In the proceedings below, the governmental entities argued that their actions and inactions that were claimed to be negligent in the amended complaint were discretionary choices that are entitled to immunity under ORS 30.265(6)(c). The amended complaint and cross-claims allege similar acts of negligence against the state, the county and the city (pertaining to not changing traffic control and movements on Collins Street, failing to change the parking on the highway, not posting warning signs, and failing to make physical changes to the intersection itself). Each of the governmental entities, then, had the burden in the summary judgment proceedings to establish that a responsible official or agency made permissible discretionary decisions to continue and not change the design and characteristics of

the intersection itself, the Highway 101 parking, the content and placement of warning signs, and the control of traffic to and from Collins Street.[4] *See Vokoun v. City of Lake Oswego*, 335 Or 19, 31, 56 P3d 396 (2002) ("The burden is on the governmental defendant to establish its immunity.").

The state first argues that all improvements or changes to Highway 101 and the Collins Street approach in the years before the accident were considered, but not funded, in the State of Oregon Statewide Transportation Improvement Program (STIP), and the adoption of the STIP immunizes the state from liability for the negligence alleged in the amended complaint and cross-claims. The summary judgment record does not bear out the state's assertion.

The STIP is a statewide capital improvement plan that is adopted by the Oregon Transportation Commission. The plan determines the prioritization, funding, and scheduling of state transportation projects and programs over a four-year period.[5] Some of the projects on the state plan are selected from local transportation system plans. Projects from the STIP are then included in the Highway Construction Plan, which is submitted on a biennial basis to the Legislative Assembly as part of the Governor's budget, and which includes "a list of projects from the STIP that the department intends to work on in the biennium for which the budget is submitted." ORS 184.658.

The text of the applicable STIP was not part of the summary judgment record. An ODOT traffic engineer attested, however, that the agency prioritizes transportation safety improvements, including improving the line of

---

[4] The amended complaint and cross-claims charge negligence in "permitting" the parking and the intersection conditions. We read those allegations to pertain to the continuation of or failure to change those conditions, and not to negligence in the original design of the parking and streets. Generally speaking, state and local government agencies have a discretionary immunity under the OTCA for considered actions in the planning and design of public improvements. *Garrison v. Deschutes County*, 334 Or 264, 48 P3d 807 (2002) (discretionary immunity for a decision by county employees to design a waste transfer station without a particular fall protection device); *Smith v. Cooper*, 256 Or 485, 511, 475 P2d 78 (1970) ("We hold that state employees are generally immune from liability for alleged negligence in planning and designing highways.").

[5] The STIP process is described at http://www.oregon.gov/ODOT/TD/STIP/Pages/STIPDocs.aspx (last accessed Mar 7, 2015).

sight distances at intersections, under a Safety Priority Index System (SPIS), *i.e.*, "primarily on crash history as reflected in SPIS safety statistics and the projected safety benefit that a project will have on that crash history." Specifically, according to the engineer, "it is ODOT policy to include the worst 5 percent SPIS-rated accident sites, as well as other high accident rated sites based on a cost/benefit analysis, in a list of potential highway safety construction improvement projects" in the STIP safety budget. Accordingly, the Collins Street/Highway 101 intersection was "not listed on the top 5 percent of crash sites" at the time of the accident in this case, nor was it considered to be "a high accident site." According to the state, for that reason alone, the state did not consider or authorize any improvement to Highway 101 at or near the Collins Street intersection in the STIP.[6]

In *Ramirez*, we concluded that, "if a city's decision not to build a particular project causes property damage, the city is immune from liability for the damage if its inaction resulted from adoption of a 'prioritized * * * list of capital improvement projects' that did not include the one that would have prevented the damage." 179 Or App at 419 (quoting *Vokoun v. City of Lake Oswego*, 169 Or App 31, 42-43, 7 P3d 608 (2000), *rev'd*, 335 Or 19, 56 P3d 396 (2002), *on remand*, 189 Or App 499, 76 P3d 677 (2003)). The state relies upon that principle in advocating for a discretionary immunity from the adoption of the STIP.

The Supreme Court modified our discretionary immunity analysis in *Vokoun* in ways that are instructive

---

[6] The engineer noted, however, that lack of state funding would not prevent the city or the county from applying to improve the road intersection with their own funds:

"While the State did not fund new safety construction at this intersection before June 27, 2008, if Lincoln County or the City of Depoe Bay had the money to do so, they could have chosen to build a project on the state highway right-of-way at their road connection of Collins Street with Highway 101 within the city or county limits. If they had done so, any such county or city project plans would have had to be reviewed by ODOT to ensure compliance with design standards. With proper submissions and approval, the local governments could have received a permit from ODOT to construct or reconstruct the intersection at Collins Street and Highway 101. Neither Lincoln County nor the City of Depoe Bay applied for a permit for such a project."

here. In *Vokoun*, the plaintiffs claimed that the city was negligent in failing to repair and maintain a storm drainage channel and that the negligence caused a landslide that injured their homesite. 335 Or at 23. The city argued that it had a discretionary immunity from liability for that negligence because of the adoption of a capital improvement plan that did not include the storm drainage repair. We agreed with the city. The Supreme Court did not. *Id.* at 33. The court noted that the city did not explicitly "consider whether to place improvement of the storm drain and drainage course at issue in this case in the capital improvement plan." *Id.* at 22. Just as importantly,

"city policy permitted the city to adopt a supplemental budget to pay for repairs costing more than $25,000. The city presented no evidence that the city council considered whether to adopt a supplemental budget to repair the erosion that the outfall pipe at issue in this case had caused. On this record, we conclude that the fact that the city had adopted a capital improvements plan that did not include purchasing and improving the drainage course does not establish the city's immunity from plaintiff's negligence claim."

*Id.* at 33.

Similarly here, the record does not show that all of the Highway 101 modifications in question were considered and rejected in the STIP process or that other available processes were used to decide to not make those changes. The record does not establish that an omission of a STIP listing based on the safety priority index—the only policy choice identified by the state as supporting an immunity—is the exclusive mechanism to consider and not authorize a state road improvement, either in the STIP or otherwise. According to the "ODOT Highway Safety Program Guide," projects can qualify to be listed in the STIP because of their SPIS rating or a "Positive Benefit/Cost Ratio of 1.0" or because of a "risk narrative," meaning "projects where crash trends may not be evident." Apart from the STIP, some highway safety construction projects that are immediately necessary can be considered and funded through ODOT's "Quick Fix" program. Furthermore, the ODOT engineer testified that, notwithstanding the failure to list a project

on the STIP, ODOT could still make a decision "[o]f minor sorts" to construct a highway safety improvement.[7]

Similarly, there was no evidence that the state deliberately chose not to employ traffic controls on Highway 101—to reduce the speed limit, limit traffic movement from Collins Street, or post warning signs—because of the adoption and implementation of the STIP and highway budget or any other policy choice. Therefore, the record does not demonstrate whether the failure to improve the highway or change traffic controls were choices made by the state, much less whether those choices necessarily resulted from policy deliberations of the state, so as to qualify those choices as immune from liability under ORS 30.265(6)(c). The state failed to demonstrate the existence of a discretionary immunity for the negligent inactions attributed to the state in the amended complaint.

As to a discretionary immunity for the city or the county, the amended complaint charges that the city and county were negligent in failing to modify the intersection to improve sight distances for vehicles entering the intersection, failing to restrict traffic on Collins Street to avoid hazardous movements within the intersection, failing to post warning signs on both streets, and not modifying the design of parking on Highway 101 or otherwise increasing the visibility for drivers approaching and entering the intersection. The city argues that its adoption of a transportation system plan and a refinement plan for the downtown area were policy choices that immunized its alleged inactions from liability. Alternatively, the city reiterates an argument made below that it could not be negligent in failing to take those actions because it had no duty to effect any change since it did not own or control either street. *See Outdoor Media Dimensions Inc. v. State of Oregon*, 331 Or 634, 659-60, 20 P3d 180 (2001) (explaining circumstances in which we will affirm the trial court on an alternative basis). We address the city's discretionary immunity claim first, before turning

---

[7] The Highway 101/Collins Street intersection was improved by the state to remedy the vision obstruction shortly after the accident in September 2008. It could be inferred from the timing of the improvement that its funding was not part of the earlier-adopted STIP and that the adoption of the STIP did not preclude the state from remedying the dangerous intersection.

to the city's argument that it was not negligent as a matter of law.

Sometime around 2001, the city adopted the 2000-01 City of Depoe Bay Transportation System Plan (TSP) to satisfy state land use planning requirements.[8] The city's 2000-2001 TSP found that the "initial key traffic operational issues in Depoe Bay appear to be the parking, RV parking, sight distances and traffic operations at the intersections Bay and Collins, and pedestrian traffic crossing Hwy. 101." The TSP noted that, "with parking full along Hwy. 101, a driver's line of sight from the minor streets is restricted." The plan proposed to "[i]mprove connections to Hwy. 101, i.e. Collins St. Clarke St., Austin St." Those improvements were given a "medium" priority with costs estimated to be $400,000. The potential funding for the project was local taxes, assessments, fees, and trust funds, together with "ODOT Opportunity Grant Program," "Enhancement Program" and "ODOT STIP." The city superintendent further attested that the city's TSP recognized "that diagonal parking [on Highway 101] can be unsafe and could create visibility problems," but that the city council did not prioritize any change in that parking as part of the TSP, and elected to maintain that parking since then "on each occasion when the issue

---

[8] Both the city and county were required by OAR 660-012-0015(3) to adopt a TSP as part of the locality's compliance with statewide planning goal 12 (transportation), OAR 660-012-0000(1). Each locality was required to coordinate its TSP with the transportation planning of the other locality and the state. OAR 660-012-0015(5). Under OAR 660-012-0020(2), a TSP must contain a "determination of transportation needs" as well as a "road plan for a system of arterials and collectors and standards for the layout of local streets" that address, among other things, "[c]onnections to existing or planned streets, including arterials and collectors." A TSP also must contain a "system of planned transportation facilities, services and major improvements," including a description of the improvement and identification of the provider of each planned transportation facility or service. OAR 660-012-0020(3)(b) - (d). The selection of transportation system alternatives must be based on meeting "the identified transportation needs in a safe manner and at a reasonable cost with available technology." OAR 660-012-0035(1). A TSP is required to contain a financing program, that includes a list of planned facilities and improvements, a general estimate of timing of the improvement, a determination of rough cost estimates for the projects, and (for some cities) "policies to guide selection of transportation facility and improvement projects for funding in the short term." OAR 660-012-0040(2). A financing program is only required, however, for urban areas containing a population of greater than 2,500, OAR 660-012-0040(1), which does not include the City of Depoe Bay. *See Oregon Blue Book* 248 (2015-2016) (listing 2000 population of City of Depoe Bay as 1,174 persons).

has come up" because of local business opposition to removal of any parking spaces.

Thus, the plan, in fact, recognized the existence of a hazardous intersection, and proposed a reconstruction of the intersection to mitigate that hazard. The TSP did not, however, determine when redevelopment of the intersection would occur, the city's role in financing or constructing that improvement, or direct any city action or inaction in those regards. As noted, "[m]erely weighing costs and benefits and making a decision," here, to mitigate a hazardous intersection, does not create a discretionary immunity; "[t]he government must also demonstrate that it took the action necessary to effectuate that decision." *Hughes*, 345 Or at 501. The city did not present evidence that it *took actions* to avoid or delay the improvement project as part of implementing the TSP. Therefore, the adoption of the TSP by itself did not immunize the city's failure to take action to initiate or construct improvements or changes to the streets.

For the same reasons, immunity does not attach because of other city actions that assessed the need to improve the intersection or identified the necessary change. In 2005, the city adopted a Depoe Bay Highway 101/Downtown Refinement Plan that included a capital improvement and financing plan. It listed as a project the maintenance of Collins Street as a two-way street with right-turn only onto Highway 101. On June 21, 2005, the city council approved a motion to maintain Collins Street in that manner. Neither of those actions determined whether or when the city should take steps to mitigate the intersection hazard. For that reason, the city's negligent inactions alleged in the amended complaint were not the necessary product of the adoption of the refinement plan or the motion, and, therefore, were insufficient to qualify for a discretionary immunity under ORS 30.265(6)(c).

The county, on the other hand, did prove that there were no material issues of fact on the existence of a discretionary immunity from liability for its alleged negligent inactions in failing to modify the intersection to improve sight distances for vehicles entering the intersection, failing to restrict traffic on Collins Street to avoid hazardous

movements within the intersection, and failing to post warning signs on Collins Street, and that it was entitled to judgment as a matter of law.[9] The county based its claim of immunity on choices made by its public works director, Buisman, who, under his delegated authority to establish program priorities and resource allocation, had authorized a "safety audit" of all county roads in 2006. The auditor, assistant public works director Cox, evaluated "road safety characteristics such as appropriate signage, pavement markings, pavement edge drop-offs, unexpected sharp curves, limited sight distance, and general road conditions that might affect control of a vehicle." According to Buisman, the purpose of the audit was to "advise me as to any areas of concern so that with our limited County road budget, we could address those roads that needed some attention." Based on the information provided to Buisman by Cox, Collins Street was identified as "okay" and "requiring no action." Buisman further said that, "[i]n the allocation of our limited funds, this Road Safety Audit by Mr. Cox was used internally by my office to prioritize projects" and that improvements to Collins Street were not undertaken because of its low priority.

Thus, the responsible county decision maker, Cox, through the safety audit, made discretionary choices about the priority of transportation improvements of the types at issue (road improvements, signage, other traffic controls), and that policy was implemented by a person with authority to do so, Buisman, through an annual allocation of road construction and maintenance funds. Those facts, which are uncontradicted in the summary judgment record, satisfy the tests for a discretionary immunity outlined in *Hughes* and *Ramirez*. The court did not err in granting summary judgment in favor of the county and against plaintiff and Colip.

Finally, on the city's alternative argument on its lack of liability, the city has not shown that it was not negligent as a matter of law because it had no duty or ability to maintain or improve the streets in question. The city claims that it had no duty of due care because it was not the owner or responsible road authority for Highway 101 or Collins Street.

---

[9] There was no evidence that the county had any role in the designation of parking along Highway 101 or the construction of signage on that highway.

We rejected that "not my street" contention in *John v. City of Gresham*, 214 Or App 305, 165 P3d 1177 (2007), *rev dismissed as improvidently allowed*, 344 Or 581 (2008). There, a pedestrian, who was injured when crossing a county road in a crosswalk, alleged that a city was negligent in the design of the crosswalk. The city argued that it could not be liable for injuries that occurred on land that it did not own. We concluded that, in light of the city's role in the design of the improvement, "the fact that the city does not own the street on which the accident occurred does not necessarily mean, as a matter of law, that it cannot be liable for the accident." *Id.* at 317. Put another way, a city's responsibility to make street travel safe may depend upon factors beyond ownership of the street itself. Given the city's actions here in planning and coordinating needed improvements to the streets with the state and county in the TSP, affecting the parking along Highway 101, and adopting desirable traffic controls for Collins Street, we cannot say as a matter of law that the city has no responsibility for the safe conditions of the streets.

Relatedly, a lack of ownership of the streets does not, as a matter of fact, preclude the city from affecting their maintenance or improvement. As noted, the state traffic engineer attested that the city "could have chosen to build a project on the state highway right-of-way at their road connection of Collins Street with Highway 101 within the city or county limits * * * [and] received a permit from ODOT" to do so. The city could have adopted a financing plan, as part of the TSP, to "guide selection of transportation facility and improvement projects for funding in the short-term." OAR 660-012-0040(2). The city admits that the council elected to maintain the parking on Highway 101 "on each occasion when the issue has come up." *See also* ORS 810.010 (designating an incorporated city's governing body as "the road authority" for all streets "other than state highways, within the boundaries of the incorporated city"). Thus, the city was not free from negligence, as a matter of law, because of county and state ownership of the streets. The trial court erred in granting summary judgment in favor of the city.

Judgment in favor of the State of Oregon and City of Depoe Bay reversed and remanded; otherwise affirmed.