ORTEGA, P. J.
*776 Defendant TriMet appeals a judgment entered against it after a jury found it liable for injuries that plaintiff Thompson suffered as a result of being stabbed by another passenger on the bus that he was riding. TriMet's sole assignment of error concerns the *1190 trial court's denial of TriMet's motions for a directed verdict based on its position that Thompson did not provide timely notice of his negligence action against TriMet as required by the Oregon Tort Claims Act (OTCA), ORS 30.260 to 30.300. TriMet argues on appeal that Thompson knew at the time of the attack that he had been harmed and of the circumstances of the bus operator's conduct, which are the basis for his claim against TriMet. Consequently, TriMet contends, Thompson's tort claims notice was untimely as a matter of law. We agree with TriMet that the trial court erred and therefore reverse.
The stabbing occurred on October 2, 2012. Initially, another passenger on the bus who was also stabbed, Dickson, timely provided notice to TriMet in February 2013 that he intended to file a claim against it. Dickson filed a negligence action against TriMet and the bus driver, James, in June 2013, and on September 5, 2013, the complaint was amended to add Thompson as a plaintiff and to remove James as a defendant. TriMet moved for summary judgment against Thompson's claims, asserting that Thompson failed to provide timely tort claims notice. The trial court denied that motion. At the close of plaintiffs' case at trial, TriMet moved for a directed verdict on the ground, among others, that Thompson had failed to provide timely tort claims notice. The court also denied that motion. At the close of all the evidence, TriMet renewed its motion for a directed verdict, which was denied. The jury found that TriMet was negligent in failing to protect Thompson and Dickson. TriMet appeals the judgment as to Thompson.
We review the trial court's denial of TriMet's motions for a directed verdict for legal error. Cohen v. Awbrey Glen Homeowners Assn. , 283 Or. App. 244, 250, 388 P.3d 1160 (2016). In doing so, we view the evidence and reasonably derived inferences in the light most favorable to the prevailing party-here, Thompson-and determine whether that *777 party adduced legally sufficient evidence to prevail. Walsh v. Spalding & Son, Inc. , 216 Or. App. 55, 60, 171 P.3d 1032 (2007), rev. den. , 344 Or. 391, 181 P.3d 770 (2008). As to the discovery of tortious conduct, a "court cannot decide that question as a matter of law unless the only conclusion that a reasonable trier of fact could reach is that the plaintiff knew or should have known of the critical facts at a specified time." Doe v. Lake Oswego School District , 353 Or. 321, 333, 297 P.3d 1287 (2013) (citing Kaseberg v. Davis Wright Tremaine, LLP , 351 Or. 270, 278, 265 P.3d 777 (2011) ).
We take the following facts from Thompson's testimony at trial where he recounted the circumstances of the stabbing that took place on October 2, 2012. Thompson was a passenger on a TriMet bus. He noticed another passenger, Vanhagen, talking on the phone and, based on the tone of Vanhagen's voice, could tell that he was upset. After 10 to 15 minutes, Thompson saw Vanhagen walk toward the front of the bus at a stop. At the front of the bus, Vanhagen assaulted another passenger and argued with the bus driver, James. Vanhagen stepped off the bus and continued to argue with James. Vanhagen tried to get back on the bus a couple of times, and each time James pushed him off. In one of his attempts to get back on the bus, Vanhagen punched James, at which point James stepped off the bus to follow Vanhagen outside.
Thompson followed James off the bus and observed James hit Vanhagen three to five times as Vanhagen was retreating. Thompson told James to stop hitting Vanhagen, get on the bus, and call the police-essentially to "do [his] job." Dickson unsuccessfully attempted to restrain Vanhagen, and Thompson observed the "aftermath" of Vanhagen stabbing Dickson and informed James, "There's a knife." Thompson got back on the bus and told James to close the doors, but while James was on the phone with dispatch, James "continuously opened and closed the doors," for reasons that Thompson could not understand. Shortly after, Thompson saw that Vanhagen "was coming through the bus" and that the doors were open. Thompson "actually went to the doors to try to close them as soon as" he saw Vanhagen. Thompson saw Vanhagen stab James, and then Vanhagen *778 stabbed Thompson in the back six times. With the help from another passenger, Thompson restrained Vanhagen until the police arrived. Thompson was hospitalized *1191 for five days and missed about a month of work.
At trial, Thompson testified that he believed "in hindsight" that James should have handled the situation differently in two ways. First, Thompson believed that the bus door should have been shut the instant that Vanhagen was off the bus. Second, Thompson believed that James "should not have pursued [Vanhagen] and out of anger assaulted him." According to Thompson, it was not until he met with his attorney in June 2013 that he "realize[d] that TriMet may have some liability for what transpired." He also remarked that he did not "first fully comprehend what transpired" the night of the stabbing until he saw the video shortly before trial.
As noted, at the close of Thompson's case, and at the close of all the evidence, TriMet moved for a directed verdict because Thompson failed to provide notice of his claim to TriMet within 180 days of his injury, as required by the OTCA. ORS 30.275(1), (2). TriMet argued that, on the day of the incident in October 2012, Thompson "knew that he was injured, and he knew the allegations of the complaint on all of the facts."[1] Thompson's lawyer responded that Thompson did not "know that he had a claim against TriMet until he met with me" and that Thompson took "the reasonable steps and he did contact me in June to figure out whether there was tortious conduct." Therefore, Thompson argued, the question of discovery of the injury was to be decided by a jury. The court did not explain why it denied TriMet's motions.
ORS 30.275(1) provides that "[n]o action arising from any act or omission of a public body or an officer, employee or agent of a public body within the scope of the [OTCA] shall be maintained unless notice of claim is given."
*779 The discovery rule applies to ORS 30.275 ; the 180-day notice period does not begin to run until a "plaintiff has [had] a reasonable opportunity to discover his injury and the identity of the party responsible for that injury." Doe , 353 Or. at 327, 297 P.3d 1287 (emphasis and internal quotation marks omitted). An injury is "discovered" when a plaintiff knows, or should have known, of a substantial possibility that three elements exist: (1) harm; (2) causation; and (3) tortious conduct. Gaston v. Parsons , 318 Or. 247, 255-56, 864 P.2d 1319 (1994). However, the limitation period is not tolled "until a plaintiff knows the full extent of the harm that has been inflicted or becomes aware of the legal implication of facts rather than of the facts themselves." Doe , 353 Or. at 335, 297 P.3d 1287. Rather, "if a plaintiff knows that he or she has suffered some harm and knows that it is the result of tortious conduct, an argument that the plaintiff did not know the full extent of the harm or that those facts had legal significance will be of no avail." Id .
TriMet asserts on appeal that the trial court erred in denying the motions for directed verdict because no reasonable juror could have found that Thompson had provided TriMet with timely notice of a claim under the OTCA. TriMet asserts that, at the time of the incident, all three elements necessary to discovery of an injury-harm, causation, and tortious conduct-were known to Thompson. In particular, TriMet asserts that it cannot be the rule that a plaintiff discovers tortious conduct when the plaintiff is told by an attorney that the conduct already known to the plaintiff is tortious.
Thompson defends the trial court's rulings with the assertion that there was no evidence that he believed that James erred in his conduct on the night Thompson was stabbed. "It was only in hindsight"-when he met with his lawyer-that Thompson believed that James's conduct (for which he seeks to hold TriMet responsible under a theory of respondeat superior ) was tortious and that James's actions were the cause of his injuries. According to Thompson, when all of the evidence is considered in the light most favorable to him, including inferences that could be drawn from them, it cannot be established as a matter of law that he had knowledge of TriMet's tortious conduct when *1192 the injury occurred. Rather, it is Thompson's view that the jury was properly *780 permitted to find that, although he saw James get off the bus and attack Vanhagen, and despite that he told James to shut the door and call the police, he did not understand that James's conduct was tortious until he met with his attorney in June 2013.
We agree with TriMet that Thompson, at the time of the injury, knew of his injury and knew that it was the result of tortious conduct and that no reasonable juror could conclude otherwise. Thompson was not excused from his obligation to provide OTCA notice because he was unaware that the facts of his injury had legal significance.
As the Supreme Court has explained, "an argument that the plaintiff did not know the full extent of the harm or that those facts had legal significance will be of no avail ." Doe , 353 Or. at 335, 297 P.3d 1287 (emphasis added). When Thompson met with his attorney in June 2013, he merely learned that the circumstances of the stabbing had legal significance. That is, according to Thompson, it was not until he met with his attorney that he "figured out" that there was tortious conduct and that he had a claim against TriMet. Nevertheless, Thompson observed the critical facts as they occurred; he did not discover any new facts about TriMet or about James's conduct when he met with his attorney. Nor does Thompson assert that his meeting with his lawyer prompted an investigation into additional facts necessary to prove a negligence claim against TriMet. The discovery rule does not extend to hindsight or realizations about the legal significance of a prior event or to a conversation with a lawyer that involves nothing more than the lawyer's perspective on the events that occurred or the lawyer's knowledge of tort liability. Rather, the discovery rule applies to the period of time when a "plaintiff knew or should have known the critical facts " supporting his tort action. Doe , 353 Or. at 333, 297 P.3d 1287 (emphasis added).
Turner v. Dept. of Transportation , 270 Or. App. 353, 348 P.3d 253 (2015), aff'd on other grounds , 359 Or. 644, 375 P.3d 508 (2016), does not aid Thompson. In that case, the plaintiff was traveling north on his motorcycle on Highway 101 in the City of Depoe Bay. A car driven by Colip entered the highway from the east on a road owned by Lincoln County *781 and collided with the plaintiff. After suffering serious injuries, the plaintiff brought a negligence action against Colip as well as the state, the county, and the city. Id. at 355, 348 P.3d 253. As to the governmental entities, the plaintiff alleged that they had negligently designed and maintained the intersection and both roadways, and that he neither knew nor could reasonably have known of the governmental entities' negligence before the expiration of the OTCA notice deadline. Id. at 356-57, 348 P.3d 253. The governmental entities moved for summary judgment against the plaintiff on the basis, among others, that the plaintiff failed to provide timely notice under the OTCA. Id. at 357, 348 P.3d 253. On appeal, we noted that the dangerousness of the road conditions was not obvious at the time of the incident as a matter of law. We stated that the plaintiff
"would need to reasonably have known, at the very least, that the accident was caused by Colip's inability to detect northbound traffic on Highway 101 until she was in the travel lane for that traffic, and that there was a substantial possibility that that vision obstruction, in turn, was caused or not remedied by particular 'tortious conduct,' that is, unreasonable actions and inactions of the governmental entities."
Id. at 362-63, 348 P.3d 253. Moreover, we stated that it was not immediately apparent whether "the city, the county, or the state, or all three governmental entities, were responsible for assessing or mitigating safety issues with the parking design or traffic controls and movement at the intersection." Id . at 362, 348 P.3d 253.
Thompson relies on Turner to make the point that, although Vanhagen's tortious conduct was obvious, TriMet's was not, and the "analysis needed to determine whether TriMet's conduct was tortious is more complex." Further, Thompson contends that he, like "any reasonable passenger, had to assume that the [bus driver] was doing what was necessary under the circumstances." In Turner , however, there were facts discovered after the collision, such as Colip's inability to view oncoming traffic from her lane due to *1193 the governmental agencies' negligent design and maintenance of the highway intersection. Id. at 362, 348 P.3d 253. Moreover, it was unclear which governmental entity was responsible for addressing any safety issues. Id. Neither of those circumstances applies here. Further, the record establishes *782 that Thompson did not assume that James's actions were "necessary under the circumstances" when he told James to get back on the bus and close the doors and that Thompson observed James follow Vanhagen off the bus-evidence that Thompson used to prove his case that TriMet negligently failed to protect him.
We conclude that no reasonable trier of fact could conclude that Thompson did not know of the critical facts that supported his claim that TriMet negligently failed to protect him from Vanhagen at the time the injury occurred. The legal significance of those facts has no bearing on extending the time for which he was required to provide notice of his tort claim to TriMet. Therefore, his OTCA notice filed more than 180 days later was untimely.
Judgment reversed as to Thompson; otherwise affirmed.

TriMet also asserted that Thompson knew of TriMet's legal liability in February 2013, when he met with Dickson, who was in the process of bringing an action against TriMet. On appeal, TriMet argues in the alternative that that meeting triggered accrual of the notice period. Because we conclude that the notice period began to run on the date of Thompson's injury, we need not address that alternative argument.